[L. A. No. 20739. In Bank. Feb. 10. 1950.]

### RAYMOND L. HEFFERAN, Respondent, v. J. RAY FREEBAIRN, Appellant.

[L. A. No. 20740. In Bank. Feb. 10, 1950.]

### J. RAY FREEBAIRN, Appellant, v. RAYMOND L. HEFFERAN, Respondent.

W. I. Gilbert, Jr., and Henry E. Kappler for Appellant.

Edward L. Barrett, Jr., as Amicus Curiae on behalf of Appellant.

Boller, Suttner & Boller and T. R. Suttner for Respondent.

TRAYNOR, J.—On or about December 20, 1946, plaintiff, R. L. Hefferan, entered into a contract to purchase the "Gilray Coffee Shop" from defendant J. R. Freebairn. He paid $20,000 in cash and $35,000 in the form of a promissory note secured by a chattel mortgage. Plaintiff took possession of the coffee shop on January 1, 1947; the escrow was closed on January 7, 1947. Plaintiff gave defendant a check for the inventory about January 27, 1947. On January 28, 1947, he served notice of rescission. A certificate of Business Under a Fictitious Name was filed by plaintiff on January 29, 1947, and thereafter he continued to operate the café. On February 1, 1947, and March 1, 1947, he made two payments of $1,000 each on the promissory note. Defendant did not accept the offer of rescission. On March 17, 1947, plaintiff filed this action to rescind the contract, to cancel the note and mortgage, and to obtain restitution of his cash payment. Defendant subsequently brought an action to foreclose the chattel mortgage, and the two actions were consolidated. Judgments were entered for plaintiff, and defendant appeals.

As grounds for rescission, plaintiff alleged that defendant stated that the Gilray Coffee Shop would net over $20,000 profit for 1946 and made other misrepresentations. Plaintiff further alleged that all the representations were false and

fraudulent and that he relied upon them and was thereby induced to enter into the agreement. The evidence on these matters is contradictory.

Plaintiff testified in full support of the allegations. Defendant denied ever having made the statements in question. Both agreed that they visited defendant's accountant on December 19, 1946, for the purpose of inspecting the records of the coffee shop. They agreed that the inspection was limited to the profit and loss statements for the first 10 months of 1946 and gross sales records for November and part of December, 1946. Plaintiff testified that both defendant and his accountant assured him that the profits made by the business were really higher than those shown on the statements, but both defendant and the accountant denied giving any such assurance. Plaintiff further testified that the profit and loss statements showed a profit of about $8,000 instead of $16,000, but that when he asked defendant to explain the discrepancy, defendant told him that there were rebates from suppliers not shown on the statements. Defendant admitted discussing rebates but testified that they were reflected in the books of the coffee shop. Plaintiff testified that the payments made on the note after giving notice of rescission were made with the intention of protecting himself from default on the chattel mortgage.

The trial court resolved all issues of credibility and made all inferences from the testimony in favor of plaintiff. It was found that to induce plaintiff to purchase the café defendant made, among others, the following misrepresentations: that the business would earn $20,000 for the year 1946 and that defendant had already taken $16,000 out of the business up to and including October, 1946. The court further found that plaintiff relied on the representations and would not have purchased the café had he not believed them to be true; that the representations were untrue; that the café earned only $5,666.25 during the first 11 months of 1946, $387.19 during December, and that defendant had taken only $10,115 out of the business up to and including October, 1946; that plaintiff discovered the falsity of the representations after taking possession of the business; that in the course of an inspection of defendant's records, plaintiff saw only profit and loss statements for the first 10 months of 1946 and gross sales records for November and part of December, 1946; that these records indicated a profit of only $5,666.25; that before any agreement by the parties, defendant

had represented that the profits were much larger than those shown on the statements, inasmuch as profits were earned from trade rebates that were not accounted for in the statements. The trial judge further found that the two payments of $1,000 on account of the purchase price after giving notice of rescission were made for the purpose of preventing a default on the note and mortgage pending negotiations concerning plaintiff's notice of rescission and were not intended by him as a waiver of his rights under the notice.

Three issues of law are presented to this court. (1) Was the plaintiff justified in relying on the misrepresentations? (2) did the plaintiff prove sufficient injury resulting from defendant's fraud to justify rescission? (3) Did the plaintiff waive the right to rescind by the payments on the note or by other actions?

I

Defendant contends that plaintiff is precluded from rescinding the contract by virtue of the knowledge that he acquired or should have acquired in the course of the negotiations with defendant.

██ The standards by which the buyer's acts must be judged were set forth by this court in *Seeger* v. *Odell,* 18 Cal.2d 409 [115 P.2d 977, 136 A.L.R. 1291], ''Negligence on the part of the plaintiff in failing to discover the falsity of a statement is no defense when the misrepresentation was intentional rather than negligent. . . . Nor is a plaintiff held to the standard of precaution or of minimum knowledge of a hypothetical, reasonable man. Exceptionally gullible or ignorant people have been permitted to recover from defendants who took advantage of them in circumstances where persons of normal intelligence would not have been misled. [Authorities cited.] 'No rogue should enjoy his ill-gotten plunder for the simple reason that his victim is by chance a fool.' . . . If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable, however, he will be denied a recovery.'' (*Seeger* v. *Odell,* 18 Cal.2d 409, 414-415 [115 P.2d 977, 136 A.L.R. 1291].) The necessary implication of the findings and judgment below is that plaintiff's reliance was justified. Finding IV states: ''The plaintiff believed and relied upon each and all of the foregoing representations made by defendant and was thereby induced to purchase said Cafe. Plaintiff would not have purchased said Cafe had he not believed that each of said

representations was true. At said time plaintiff had never been in the restaurant business, and possessed no special knowledge or information concerning restaurant fixtures and the restaurant business except some experience gained in the army." In Finding XVII the court states: "It is true that plaintiff inspected certain records of defendant pertaining to the profit and loss of said business but in this connection the Court finds that plaintiff was shown only profit and loss statements for the first 10 months of 1946 and gross sales records for November and part of December, 1946." Finally, the court found that after plaintiff saw the statements indicating a smaller profit than had been represented, defendant explained the discrepancy by the fact that trade rebates were not shown in the statements.

The defendant relies on *Carpenter* v. *Hamilton,* 18 Cal. App.2d 69 [62 P.2d 1397], where the court said (p. 71), "If it fairly appears from the evidence that the buyer undertook to investigate for himself the matters as to which representations had been made, he cannot be allowed to later claim that he acted upon the representations, even though he voluntarily abandoned his investigation before it was completed." In the Carpenter case, however, the defects in the property conveyed were immediately visible upon the most cursory inspection by one taking possession of the realty. The misrepresentations of earnings in the present case fall into a category for which the Carpenter case makes a specific exception, i.e., "that a buyer is not required to employ experts to investigate matters of a technical nature as to which the seller has full knowledge and the buyer none, and if for this reason the investigation is incomplete he may show that he relied upon the representations as to matters which he did not investigate." (*Cf. Shearer* v. *Cooper,* 21 Cal.2d 695, 703, 704 [134 P.2d 764] ; *Bagdasarian* v. *Gragnon,* 31 Cal.2d 744, 748 [192 P.2d 935].) In the light of the court's finding that plaintiff accepted defendant's reference to rebates as an explanation of the low profit shown on the accounting statements, another exception specified in the Carpenter case applies, namely, that a buyer is not chargeable with knowledge of conditions that he fails to discover because of some artifice or deception of the seller.

More closely analogous on its facts to the present case is *Davis* v. *Butler,* 154 Cal. 623 [98 P. 1047], involving a sale of a controlling interest in a bottling company, which was rescinded because the seller of the stock had misrepre-

sented the amount of the corporation's indebtedness. The court said: ''The rule that a party may not complain of misrepresentations regarding matters which he has investigated or, having the opportunity so to do, has begun to investigate for himself . . . has no application here. While the plaintiff, before purchasing, looked over the books of the corporation, the court finds (and the finding is not challenged) that defendant stated to plaintiff that neither he nor the corporation kept any books of account showing the corporate indebtedness. The plaintiff was fully justified in relying upon defendant's statements as to such indebtedness.'' (154 Cal. 623, 627.) ▇ There was substantial evidence offered by the parties in the present case to support the conflicting versions of the facts. We cannot say that the trial court was compelled by the evidence to find for the defendant and we must therefore accept its finding.

Since there was one material misrepresentation justifiably relied on by the plaintiff, there is no necessity for a discussion of the other misrepresentations made by the defendant. (See 12 Cal.Jur. 741.)

## II

▇ The second major issue in this case is: Did the plaintiff prove that sufficient injury resulted from defendant's fraud to justify rescission? In *Davis* v. *Butler*, 154 Cal. 623, 627 [98 P. 1047], the court stated: ''It is not essential to the right to rescind a contract for the purchase of property that the purchaser should be able to show that the property purchased was worth less than he paid for it. It is enough that he was induced, by false representations, to buy property which would, if the representations had been true, have been worth more than it actually was worth. *Spreckels* v. *Gorrill*, 152 Cal. 383 [92 P. 1011].'' It is obvious that receiving a business earning less than $10,000 a year constitutes a substantial injury to a buyer to whom it was represented as earning $20,000. ▇ The plaintiff need not plead or prove pecuniary loss, so long as the record indicates that there was an injury or prejudice resulting from the fraud. *Dunn* v. *Stringer*, 41 Cal.App.2d 638 [107 P.2d 411]. The case of *Darrow* v. *Houlihan*, 205 Cal. 771 [272 P. 1049] does not militate against this conclusion. There, the defendants believed themselves defrauded because they learned that the land they had contracted to acquire in an exchange was encumbered by a trust deed different in its term from the

mortgage that the plaintiff real estate broker had represented was on the realty. The defendants refused to perform and the plaintiff sued for and recovered his commission. The court held that the defendants had shown no injury. "It is not shown, nor have the defendants attempted to show, that had the sixty-day period allowed to the Littles [vendors] by the exchange agreement to comply with its provisions been permitted to elapse the defendants would not have received that for which they had bargained and upon the exact terms and conditions specified. . . . It cannot now be said that the Littles' property would not have come to the defendants within or at the expiration of the period fixed in the agreement, subject to a mortgage encumbrance in the sum of $2,000. The plaintiff, if he had not been precluded by defendants' abandonment of the transaction, might have made, with the assistance of the Littles, all necessary adjustments prior to the expiration of the period fixed by the exchange agreement." (205 Cal. 771, 775.) In the present case, the sale was consummated, and plaintiff did in fact receive less than what had been represented to him he would receive.

### III

■ The third issue raised by the facts is: Did plaintiff waive his right to rescind by making two payments on the note after giving notice of rescission, or by his other action or inaction in the case? The defense of waiver raises an issue of fact to be decided after a consideration of all the circumstances of the particular case, and is a question primarily for the trial court. (*French* v. *Freeman*, 191 Cal. 579 [217 P. 515]; *Schied* v. *Bodinson Mfg. Co.*, 79 Cal.App.2d 134 [179 P.2d 380].) Did plaintiff delay an unreasonable length of time before giving notice of rescission? In *French* v. *Freeman*, *supra*, the court held that the lapse of four months before rescission after discovery of the first misrepresentation did not, as a matter of law, constitute a waiver of frauds discovered subsequently. The critical misrepresentation in the present case was that of profits higher than those actually earned by the coffee shop. Plaintiff had control of the restaurant from January 1, 1947; he gave notice of rescission on January 28, 1947. Since the profits were calculated on a monthly basis and the rebates paid monthly, the interval of 28 days from the assumption of control to the attempted rescission would permit an inference of scrupulous promptness as easily as one of undue delay.

Since plaintiff had not waived his rights up to the notice of rescission on January 28, 1947, waiver can only be predicated on his acts after giving notice. Filing a Certificate of Business Under Fictitious Name in compliance with Civil Code, section 2466, cannot be said to require the trial court to make a finding of waiver as a matter of law. Similarly, the payments on the note after giving notice merely constitute facts to be considered by the trial court in determining whether the plaintiff had ratified the transaction or waived the fraud. (*Switzler* v. *Klein & Co.*, 94 Cal.App. 410 [271 P. 367] ; *Cameron* v. *Evans Securities Corp.*, 119 Cal.App. 164 [6 P.2d 272] ; *Munson* v. *Fishburn*, 183 Cal. 206 [190 P. 808].) ■ The trial court made an express finding that the payments made by plaintiff were for the purpose of preventing a default on the note and mortgage, and were not intended as a waiver of his rights under the notice of rescission. There is substantial evidence to support this interpretation of plaintiff's acts and no evidence that defendant was misled or injured by any undue delay in giving notice of rescission. (See *Esau* v. *Briggs*, 89 Cal.App.2d 427 [201 P.2d 25].)

The judgments are affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied March 6, 1950.