[L. A. No. 21069. In Bank. Jan. 19, 1951.]

MRS. RICHARD EARL, Plaintiff and Respondent, v. SAKS AND COMPANY (a Corporation), Defendant and Respondent; A. K. BARBEE, Appellant.

[L. A. No. 21337. In Bank. Jan. 19, 1951.]

SAKS AND COMPANY (a Corporation), Respondent, v. A. K. BARBEE, Appellant.

Chas. L. Nichols, Ivan Miller, William R. Law, R. S. McLaughlin & McClean & Petty for Appellant.

Thomas D. Mercola for Plaintiff and Respondent.

Wright, Wright, Green & Wright, Loyd Wright and Herschel B. Green for Defendant and Respondent.

SCHAUER, J.—A. K. Barbee appeals from judgments, in consolidated actions hereinafter described, that respondent

Mrs. Richard Earl is the owner of a certain mink coat and that Barbee owes respondent Saks and Company $3,981.25. He contends that an asserted sale of the coat to him by Saks, and an asserted gift of the coat by him to Mrs. Earl, were voidable, and were rescinded by him, because his consent thereto was induced by fraud of Mrs. Earl and Saks. We have concluded that these contentions are tenable.

On April 4, 1947, Barbee and Mrs. Earl went to the fur salon of Saks. A representative of Saks showed them a mink coat and told them its price was $5,000. Barbee told Saks that he would like to buy the coat for Mrs. Earl but that he would pay no more than $4,000 for it. Saks rejected repeated offers of Barbee to purchase the coat for $4,000. Unknown to Barbee, Mrs. Earl then asked Saks to pretend to sell the coat to him for $4,000, and stated that she would pay the difference between $4,000 and the price of the coat. Saks agreed to this. It told Barbee that it would sell the coat to him for $3,981.25, made out a sales slip for that amount, and Barbee signed it in the belief that that was the full price of the coat. Saks then delivered the coat to Barbee; he in turn delivered it to Mrs. Earl and said that he gave it to her. Mrs. Earl, wearing the coat, left the store with Barbee.

The next day, April 5, Mrs. Earl returned the coat to Saks to be monogrammed and paid Saks the balance of its price, $916.30. Later the same day Barbee told Saks that he had revoked the gift to Mrs. Earl, that he was the owner of the coat (which he thought he had purchased for $3,981.25), that he would pay the agreed price ($3,981.25) only if Saks would deliver the coat to him, and that it was not to deliver the coat to Mrs. Earl. Thereafter Mrs. Earl demanded that Saks deliver the coat to her; Saks refused and attempted to return her $916.30; but she refused to accept the money; Saks retained (and still retains) possession of the coat.

Mrs. Earl then sued Saks, alleging conversion of the coat. Saks answered, denying the conversion, and at the same time filed a pleading which it denominated "Cross-Complaint in Interpleader," which, however, not only named Mrs. Earl and Barbee as asserted interpleader cross-defendants but also implicitly and necessarily, in the light of the circumstances, required, if Saks was to prevail, the granting of affirmative adversary relief against Barbee or Mrs. Earl or both of them. Saks alleged that it sold the coat to Barbee for $3,981.25; that Mrs. Earl, "as additional consideration . . . to induce" Saks to make the sale to Barbee, agreed to pay Saks $916.30

and later paid Saks that sum; that Saks is indifferent between the claims of the cross-defendants and is willing to deliver the coat to either cross-defendant as the court may direct (but, it is implicit from Saks' several pleadings read together, only upon condition that it recover from Barbee or from Mrs. Earl or from both of them the full price of the coat); it asked that the cross-defendants be required to "litigate between themselves their claims to said mink coat"; it did not offer to relinquish its asserted claim for any part of the full price of approximately $4,900. Mrs. Earl's answer to the cross-complaint admitted that she paid Saks $916.30 and alleged that at that time title to the coat "was transferred to her as is more fully alleged in her complaint." The complaint, however, contains no allegations as to transfer of title. Barbee in answer to the cross-complaint admitted that he told Saks he would pay the price discussed between Saks and Barbee if and only if Saks "would sell and deliver the coat to him at and for [such] price," and alleged that Mrs. Earl's agreement to pay Saks $916.30 was fraudulently concealed from him by Saks and Mrs. Earl; that they represented to him that the full price of the coat was $3,981.25; and that if he had known of the secret agreement he would not have agreed to buy the coat. No pleadings joining issues between Barbee and Mrs. Earl were filed. Saks also brought a separate action against Barbee, alleging that he owed Saks $3,981.25 for goods sold and delivered. Barbee in answer made allegations of fraud substantially similar to those in his answer to Saks' cross-complaint. The two actions were consolidated for trial.

From what has been stated it appears that Saks, because of its duplicitous compact with Mrs. Earl, finds itself in this position: It knowingly and purposefully caused Barbee to believe that it was selling him—and him only—a certain fur coat for the full price of $3,981.25. It wants to collect the $3,981.25 from Barbee but it cannot (or will not) deliver the coat to him—fully paid, for $3,981.25 or otherwise—because, although it has possession of the coat, it has already collected $916.30 for the same coat from Mrs. Earl, and she claims to own the coat and refuses to release her claim to it (or for damages for its alleged conversion) as against either Saks or Barbee. Mrs. Earl further claims the coat as against both Saks and Barbee on the theory of an asserted gift from Barbee. But the gift is, necessarily, dependent upon Barbee's having purchased the coat from Saks and that purchase, it is obvious, was induced by the joint fraud of Mrs. Earl and Saks. Saks

and Mrs. Earl—both guilty of express fraud—are seeking the aid of the court to recover that which they are entitled to, if at all, only because of their fraud.

 While, as indicated above, the pleadings do not specifically allege, or suggest the theory of, the origin of Mrs. Earl's claim of title to the coat, the trial proceeded on the theory that the issues were whether there was a sale by Saks to Barbee and a gift by Barbee to Mrs. Earl, and whether the two transactions were voidable by Barbee because of the secret agreement and misrepresentation. Barbee testified that he would not have bought the coat if he had known that the price was more than $4,000. Every element of the transaction and all the circumstances shown appear to support this position; no evidence is inconsistent with it. At the trial Barbee's counsel restated the position which Barbee had announced to Saks before the actions were instituted: "we are perfectly willing to accept the coat and pay . . . the price that we agreed to pay for it [$3,981.25] . . . but we certainly are under the circumstances disclosed here already in this evidence [the secret agreement] . . . not willing to let this coat be handed over to this young lady." Counsel for Barbee also offered to prove that the gift was made in reliance on Mrs. Earl's representations that she would "reciprocate his affection and would give up running around with other men" and that Barbee rescinded the gift when he learned that those representations were false. The offered proof on the latter theory was properly rejected, for no such issue was raised by the pleadings.

The trial court gave judgment against Mrs. Earl on her complaint for conversion and in favor of Saks on its complaint against Barbee for goods sold and delivered. On Saks' "Cross-Complaint in Interpleader" it gave judgment that Mrs. Earl is the owner and entitled to possession of the coat. We are satisfied that the judgment in neither action is tenable insofar as it is adverse to the defendant and cross-defendant Barbee.

In the action instituted by Mrs. Earl, in which Saks cross-complained (L. A. No. 21069), the trial court made detailed findings of many evidentiary facts, including the above re-counted proposal of the secret agreement and misrepresentation by Mrs. Earl, its acceptance by Saks, and the secret payment by Mrs. Earl of $916.30 to Saks. There is no specific finding as to the truth of Barbee's uncontradicted testimony that he would not have bought the coat if he had known of the secret

agreement and the truth as to the matter misrepresented. In the action brought by Saks (L. A. No. 21337) there is the conclusionary finding that Saks "sold and delivered" the coat to Barbee "at the agreed price of $3,981.25," but the integrity of this finding is completely destroyed by Saks' own pleadings and by the other findings. In the action instituted by Mrs. Earl there are conclusionary findings that Barbee "made a gift of" the coat to Mrs. Earl; that she "is now the owner of said mink coat"; and that Saks "was not guilty of any fraudulent conduct." But Saks' admitted conduct, like that of Mrs. Earl, is fraudulent as a matter of law, and Mrs. Earl's asserted title to the coat derives directly from her own fraud and that of Saks which she suggested.

### Amendment of Barbee's Answers

■ The allegations as to fraud in each of Barbee's answers were added by amendment when the case came on for trial. Saks contends that the trial court abused its discretion in allowing the amendments (in August, 1948), in view of the fact that Barbee knew of the secret agreement at least from the time Saks cross-complained (in June, 1947). It says, "Had Saks known at the time that appellant filed his answer to the cross-complaint in interpleader . . . that appellant was going to allege fraud as an affirmative defense, perhaps more successful efforts could have been made to have terminated expensive and long drawn out litigation." But it appears to us that Saks could not have been prejudiced by Barbee's delay in amending his answers. Saks knew of the secret agreement and misrepresentation to Barbee from the time it made them; it knew that neither the making of the agreement with Mrs. Earl nor the active misrepresentation to Barbee was disclosed to Barbee by or in the presence of its representatives; and its vague statement as to efforts to terminate the litigation does not show prejudice.

### Rescission of Gift

■ The trial court was not entitled to disbelieve Barbee's uncontradicted testimony (supported by the circumstances shown and by the undisputed evidence of all parties that he repeatedly insisted he would not pay more than $4,000) that he would not have bought the coat if he had known of the secret agreement between Saks and Mrs. Earl. Although Barbee did not expressly allege or testify that he would not have given the coat to Mrs. Earl if he had known of the secret agreement, it is apparent that the case was tried as if this

were in issue and that in fact he would not have made the gift had he known of the secret agreement. Obviously Barbee's belief that the full price of the coat was $3,981.25 underlay and was a material element in, and inducing cause of, the gift as well as the immediately preceding purchase. As previously indicated, he could not have made the gift unless he made the purchase, and it is indisputably established that the purchase was induced by the express fraud of both Mrs. Earl and Saks. The facts that Barbee at the trial, by correctly rejected offers of proof, sought to show another fraudulent representation which also was an inducement to his making the gift, and that he announced rescission before he learned of the secret agreement, do not prevent him from now basing his defense on such secret agreement. ■ "One may justify an asserted rescission by proving that at the time there was an adequate cause although it did not become known to him until later. One cannot waive or acquiesce in a wrong while ignorant thereof . . ." (12 Am.Jur. 1027, § 445.)

■ A gift can be rescinded if it was induced by fraud or material misrepresentation (whether of the donee or a third person) or by mistake as to a "basic fact." (Rest., Restitution, §§ 26, 39; see *Murdock* v. *Murdock* (1920), 49 Cal.App. 775, 783-785 [194 P. 762] [fraud of donee]; *In re Clark's Estate* (1931), 233 App.Div. 487 [253 N.Y.S. 524, 527], noted 45 Harv.L.Rev. 750, 80 Pa.L.Rev. 747 [innocent misrepresentation of third party]; Rest., Contracts, § 477, comment a.)

■ "A failure by the donee to reveal material facts when he knows that the donor is mistaken as to them is fraudulent nondisclosure." (Rest., Restitution, § 26, comment c.)

■ "A mistake which entails the substantial frustration of the donor's purpose entitles him to restitution. No more definite general statement can be made as to what constitutes a basic mistake in the making of a gift. ■ The donor is entitled to restitution if he was mistaken as to the . . . identity or essential characteristics of the gift." (Rest., Restitution, § 26, comment c.)

■ Since Barbee was not merely mistaken but was actively misled as to a material element in the purchase and as to an essential characteristic of the gift—he believed that the coat was purchased entirely by him so that it could be given in its entirety as a gift—he was entitled to, as he did, rescind the gift.

### Rescission of Contract

It appears from the findings of probative facts that Saks did more than merely fail to disclose its agreement with Mrs. Earl. In the circumstances, implicit in the finding that Barbee "was informed by Saks and Company's representatives that they would sell said mink coat to him for the sum of $3,981.25" is a finding that Saks actively misrepresented that the price had been reduced and that $3,981.25 was the full price. It is completely unreasonable to deny that a representation by a clerk in a reputable store that an article has a certain price, followed by the clerk's preparation and the customer's signing of a sales check showing purchase of the article for that price, amounts to a representation by the store that the *total* price and the *entire* sales transaction are as represented. This misrepresentation, it appears from the undisputed evidence, was made by Saks with knowledge that Barbee insisted on a reduction in price; from this it follows that such misrepresentation must have been made with intent to deceive Barbee and to induce him to buy the coat.

Although "Actual fraud is always a question of fact" (Civ. Code, § 1574; see 12 Cal.Jur., Fraud and Deceit, § 82), and although findings of ultimate fact ordinarily cannot be controlled by findings of probative facts (see 24 Cal.Jur., Trial, § 205), here the finding that Saks was not guilty of fraud is not controlling, for it was drawn as a conclusion from findings of probative facts which not only do not support it but which establish the contrary (see *LaMar* v. *LaMar* (1947), 30 Cal.2d 898, 900 [186 P.2d 678], and cases there cited; *Robinson* v. *Raquet* (1934), 1 Cal.App.2d 533, 541 [36 P.2d 821]) and it is contrary to Saks' own pleadings, to undisputed evidence and to all the evidence on the subject.

Saks' conduct was within the letter of the Civil Code definition of "actual fraud" which makes a contract voidable (§ 1572) : "any of the following acts, committed by a party to a contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract : 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; . . . 5. Any other act fitted to deceive." Saks' conduct is also within the letter of the Restatement of Contracts definition of fraud which makes a transaction induced by it voidable (§ 471) : "misrepresentation known to be such . . . by any person intending or expecting thereby to cause a mistake by another

. . . in order to induce the latter to enter into . . . a transaction.''

Saks relies on California cases which say that ''fraud which has produced and will produce no injury will not justify a rescission.'' (*Spreckels* v. *Gorrill* (1907), 152 Cal. 383, 388 [92 P. 1011]; *Munson* v. *Fishburn* (1920), 183 Cal. 206, 216 [190 P. 808]; *Darrow* v. *Houlihan* (1928), 205 Cal. 771, 774 [272 P. 1049].) It asserts that a person is not injured by being induced to buy a $5,000 coat for $4,000. But the coat was neither sold nor bought for $4,000. Saks was selling the coat for the full price, and a person other than seller Saks and buyer Barbee paid a substantial part—approximately one fifth—of the full price. Furthermore, this ''no injury, no rescission'' formula is not very helpful, because of disagreement in the authorities as to what is meant by ''injury.'' In a sense, anyone who is fraudulently induced to enter into a contract is ''injured''; his ''interest in making a free choice and in exercising his own best judgment in making decisions with respect to economic transactions and enterprises has been interfered with.'' (See McCleary, *Damage as a Requisite to Rescission for Misrepresentation*, 36 Mich.L. Rev. 1, 227, 245.)

Also relied on by Saks is a definition of ''injury'' which has sometimes appeared in some California cases: ''It may be conceded that it must be shown that [one who would rescind] . . . by reason of fraud, suffered an injury of a pecuniary nature, that is, an injury to his property rights, as distinguished from a mere injury to his feelings, but it will be sufficient if the facts alleged show that material injury will necessarily ensue from the fraud, although the amount of pecuniary loss is not stated.'' (*Spreckels* v. *Gorrill* (1907), *supra*, 152 Cal. 383, 388.) The ''concession'' or implication that in every case there must be ''pecuniary loss'' is incorrect. (See *Hefferan* v. *Freebairn* (1950), 34 Cal.2d 715, 721 [214 P.2d 386].) And the definition does not take account of the cases which allow rescission of a transaction induced by an agent's misrepresentation of his principal's identity, even though there was no economic reason for the unwillingness to deal with the principal. (See cases collected in 48 Harv.L. Rev. 480, 485; McCleary, *supra*, p. 246 of 36 Mich.L.Rev.).

The McCleary article, *supra*, suggests the following classification of the cases which have considered rescission for fraud:

1. The representee can rescind where he obtains the very thing that he expected but it is worth less than he was led

612

reasonably to expect. In most cases where rescission is sought the representee has received something of less economic value than he expected.

2. The representee can rescind where he obtains something substantially different from that which he was led to expect. If one is induced to buy a certain lot of land by misrepresentation that it contains a vineyard, he need not keep it when he learns that it contains instead an apple orchard; even though the lot of land is the identical lot of land and although the orchard may be more valuable than the vineyard which he expected to get, it is obviously unfair to require him to keep what he did not bargain for and did not want. The undisputed evidence describing the present sale would put it in this class. The coat bargained for between Barbee and Saks, within the knowledge and belief of Barbee, as was known to Saks, was a coat fully paid for by Barbee, which Saks knew was to be used as a gift, but Saks intended to and did deliver something substantially different; i. e., a coat on which Barbee was charged only with a down payment and for which his intended donee had secretly agreed to pay in a substantial part. The seller was to receive approximately 25 per cent more for the coat than the buyer was paying and the element of a complete gift was being destroyed.

3. Where the representee obtains exactly that which he expects, although there was misrepresentation, the social interest in the stability of transactions may or may not outweigh the social interest in not having one intentionally take advantage of another. Saks attempts to describe the present sale so as to put it in this class. It says that Barbee bargained for and expected to get a certain coat for a cost to him of not more than $4,000, and this is what he got. In the present situation, however, where the motives of Barbee were clearly noneconomic, the general social interest in stability of transactions is overridden by the interest in not having a seller make intentional misrepresentations which mislead a would-be donor into the erroneous belief that he alone is purchasing and that his donee is to receive from him a fully paid for gift, when the seller is fully aware of the effect which the misrepresentations may have and intends that they should have that effect. Again, it is important, the element of a complete gift by donor to donee is being destroyed through the misrepresentation and concealment.

 Saks contends that Barbee has not rescinded, and cannot rescind, the sale because he has stated that he was will-

ing to carry out the objectively manifested bargain to purchase the coat for $3,981.25. But at no time since Barbee's announced willingness to stand on the transaction which he believed he had entered into with Saks, did Saks offer to comply with the transaction and give Barbee what he bargained for: a coat for which he was paying in full, without Mrs. Earl, a stranger to the Saks-Barbee transaction, paying a portion of the price. Indeed, Saks, at the time of the rescission and mentioned offer by Barbee, was apparently unable to sell Barbee the coat in question as a fully paid for coat for $3,981.25 because Mrs. Earl refused to take back the $916.30 which she paid for the coat and which Saks had previously accepted. Barbee's counsel, at the trial, made clear his position; after the secret agreement, misrepresentation and payment of $916.30 were in evidence he said, ''under the circumstances of this case we shouldn't be required to pay Saks and Company anything . . . [W]hen he [Barbee] learned all the facts he never would have approved that transaction and your Honor knows it . . . [He] would do anything that could be done to repudiate that transaction and say it never was a real transaction.'' We are satisfied that the contract of purchase and the gift were voidable and were properly rescinded.

For the reasons above stated, the judgments are reversed.

Shenk, J., Carter, J., and Spence, J., concurred.

TRAYNOR, J.—Barbee received what he bargained for. (*Cf. Hefferan* v. *Freebairn,* 34 Cal.2d 715, 721 [214 P.2d 386].) The mink coat that he examined and agreed to pay $3,981.25 for, was the one he received and gave to Mrs. Earl. He concedes that the fair value of the coat was $5,000. It was not unreasonable for the trial court to conclude that, since the coat Barbee received was actually worth more than he agreed to pay, he would not have rejected it because Mrs. Earl arranged to pay the difference. (See *Spinks* v. *Clark,* 147 Cal. 439, 444 [82 P. 45]; *Spreckels* v. *Gorrill,* 152 Cal. 383, 388 [92 P. 1011]; *Munson* v. *Fishburn,* 183 Cal. 206, 216 [190 P. 808]; *Darrow* v. *Houlihan,* 205 Cal. 771, 774-775 [272 P. 1049]; McCleary, *Damage As Requisite To Rescission For Misrepresentation,* 36 Mich.L.Rev. 1, 15, 23-24.) It was under no compulsion to believe his statement that he would have rejected it. (*Huth* v. *Katz,* 30 Cal.2d 605, 609 [184 P.2d 521]; *Tingey* v. *E. F. Houghton & Co.,* 30 Cal.2d 97,

102 [179 P.2d 807]; *Blank* v. *Coffin*, 20 Cal.2d 457, 461-462 [126 P.2d 868].)

It was for the trial court to determine whether Barbee was a man of such temperament that he would have preferred having Mrs. Earl get along without the fur coat to accepting her contribution toward its purchase. He declared his love for her, expressing the sentiment several times that he wanted to give her a fur coat. She was "very much in love with the coat and wanted it badly." It was important to him that the woman he loved possess the coat; it was important to her to possess it. Her contribution enabled him to fulfill his wish and hers at a price he was willing to pay. Since they were both fur-coat-minded, it is a reasonable inference that he would not have risked disturbing the relationship between them by depriving her of the coat because she was willing to contribute toward its purchase.

Counsel at the trial made it clear that Barbee sought rescission of the sale because Mrs. Earl failed to live up to his expectations.* This failure can in no way be attributed to Saks and Company. Its coat was of sound quality and came up to Mrs. Earl's expectations. The court properly rejected Barbee's offer of proof of his expectations and disappointment. Not only were they no concern of Saks and Company, but no issue was raised in the pleadings regarding his ar-

---

*"Mr. Barbee did entertain real affections for this young lady and in bestowing these gifts he was perfectly willing to do so as long as she showed him due feeling, respect, and verity . . ."

"[W]e were perfectly willing if the understanding between these parties was carried out, we were perfectly willing that she should have the coat . . ."

"[W]hen Mr. Barbee that very day finds out that the pretenses that this girl has been showing him were not genuine, they were false and just insubstantial as they could be, Mr. Barbee concluded and he did,—the witness says she never was with him again,—that he was off on the wrong tangent and that he wasn't going to give a gift of a coat or anything else to a person that was treating him in that fashion."

"Mr. Barbee had grown very fond of this girl, that he did express affection for her and he told her in effect that if she wanted to reciprocate his affection and would give up running around with other men and give them a chance to see whether or not they might be able to mature their affection, he would be very pleased to give her suitable gifts, a token of his esteem and regard. Now that is all that I meant to say, and I think that is all I did say, and we expect further to attempt to show your Honor that on the very evening of this gift that Mr. Barbee became confronted with the reality that the young lady wasn't telling him the truth about things, she wasn't keeping appointments and on the contrary was misleading him about her plans and intentions and when that realization came upon him he felt that he wanted to interrupt the giving of the gift."

rangements with Mrs. Earl. I would therefore affirm the judgments.

Edmonds, J., concurred.

Respondent's (Saks') petition for a rehearing was denied February 15, 1951. Edmonds, J., and Traynor, J., voted for a rehearing.