[Civ. No. 22750.   Second Dist., Div. Three.   Aug. 4, 1958.]

IGNATIUS C. AUSTIN et al., Respondents, v. EDWARD A. DUGGAN et al., Appellants.

Robert E. Krause for Appellants.

Morris Singer for Respondents.

PATROSSO, J. pro tem.*—Plaintiffs instituted this action to rescind the purchase by them of a promissory note secured by a second deed of trust upon a parcel of real property in the city of Paramount, upon the ground that the same was induced by the fraudulent representations of the defendants. The case was tried to a jury which returned special and

*Assigned by Chairman of Judicial Council.

general verdicts in favor of the plaintiffs and assessed damages against the defendants in the sum of $740.54 general damages and $1,500 exemplary damages. Defendants appeal, contending that the judgment is not supported by the evidence.

Viewed in the light most favorable to the respondents, the evidence disclosses the following: Defendant Figgs was the payee and owner of two promissory notes executed by the defendant Duggan, each dated December 1, 1954; one in the principal sum of $4,985 with principal and interest payable in monthly installments of $40 or more and the entire balance being due and payable on January 15, 1960; and the other in the principal sum of $1,280 with principal and interest payable in monthly installments of $15 per month and the entire balance being payable January 30, 1960. Each note was secured by a deed of trust upon a single parcel of real property described as 13439 South Dempster, in the city of Paramount, the deed of trust securing the first mentioned note being a first lien.

Sometime prior to December 4, 1954, defendant Figgs listed these promissory notes and the trust deeds securing the same for sale with the Long Beach Trust Deed and Mortgage Exchange which was engaged in the business of selling trust deeds and mortgages at auction. This concern periodically issued a brochure giving notice of forthcoming auctions and describing the various trust deeds and mortgages to be offered for sale upon the date therein specified. The brochure giving notice of the auction to be held on December 4, 1954, listed both of the previously mentioned promissory notes and the trust deeds securing the same, together with a description thereof. The information therein contained with respect to these was furnished to the Exchange by the defendant Figgs. This included the street address of the property, the description of the improvements thereon as consisting of a one bedroom, frame and stucco house, the size of the lot as being 25 feet by 120 feet and the square footage of the building as being approximately 600 square feet. It was also therein set forth that the principal amount of the first trust deed was $3,985 and the principal amount of the second trust deed was $1,280, payable $15 per month including six percent interest "all due 12/1/58." These statements were untrue in this: The principal amount of the first trust deed was $4,985, not $3,985; the size of the lot was not 25 feet by 120 feet but 25.2 feet by 110 feet and the rear 15 feet thereof was subject to

a perpetual right-of-way for ingress and egress to and from the property located to the north thereof. Also the total floor area of the house was not approximately 600 square feet as stated, but something less than 500 square feet, and the entire balance upon the second deed of trust did not become due until January 30, 1960, instead of December 1, 1958.

The plaintiffs who had previously purchased trust deeds at auctions conducted by the Exchange, received a copy of this brochure through the mail. They undertook to make an investigation of the property described as securing the notes, but finding no house bearing the number 13439 South Dempster mistakenly assumed that the house immediately adjacent to the one in question was the house referred to in the brochure. They thereafter attended the auction sale and were the successful bidders for the second deed of trust, paying therefor the sum of $691.20. The note and trust deed were thereafter duly assigned to them through escrow and they received two monthly payments thereon after which payments ceased. They thereupon discovered the falsity of the statements in the brochure as set forth above and gave notice of rescission, following which this action was instituted.

From the foregoing recital of evidence, it is apparent that there is no basis for defendant Figgs' claim that the evidence is insufficient to support the jury's finding of fraud. While it is true that the defendants adduced evidence to the effect that all of the erroneous statements contained in the brochure were corrected by public announcement at the time of the auction, the plaintiffs denied that any such corrections were made. The jury resolved the conflict in favor of the plaintiffs and we are concluded thereby.

A different situation, however, is presented as to the defendant Duggan. There is not a scintilla of evidence that this defendant had any part in listing the trust deeds for sale or in the sale thereof to the plaintiffs, nor that he received any part of the money paid by the plaintiffs for the second deed of trust. The plaintiffs never saw or talked to Duggan until several months after the purchase of the trust deed and then only in an attempt to enforce payment from him. It follows that the judgment as to this defendant is wholly unsupported by the evidence.

Defendants also argue that the judgment may not be sustained because the plaintiffs failed to prove any damage. If the plaintiffs had affirmed the transaction and brought suit

for damages, there would be some merit in the claim. ▮ Plaintiffs, however, elected to rescind and the rule is well settled that in such situation, proof of pecuniary loss is not required. In *Earl* v. *Saks & Co.* (1951), 36 Cal.2d 602, 612 [226 P.2d 340], it is said:

"The representee can rescind where he obtains something substantially different from that which he was led to expect. If one is induced to buy a certain lot of land by misrepresentation that it contains a vineyard, he need not keep it when he learns that it contains instead an apple orchard; even though the lot of land is the identical lot of land and although the orchard may be more valuable than the vineyard which he expected to get, it is obviously unfair to require him to keep what he did not bargain for and did not want.''

Finally defendants contend that the award of the exemplary damages is improper and in any event that the amount awarded is excessive. As the jury found that the defendant Figgs was guilty of fraud, it was authorized in its discretion to assess exemplary damages (Civ. Code, § 3294). ▮ While the amount awarded appears large in relation to the amount of the compensatory damages, "Upon the question of what is an adequate sum to award as a punishment and for an example in cases of fraud the jury has a wider discretion than in the case of compensatory damages." (*Hartzell* v. *Myall* (1953), 115 Cal.App.2d 670, 677 [252 P.2d 676].) ▮ And while exemplary damages should bear a reasonable relation to the actual damages, there is no fixed ratio by which to determine the proper proportion between compensatory and exemplary damages. (*Finney* v. *Lockhart*, (1950), 35 Cal.2d 161, 164 [217 P.2d 19]; *Sheward* v. *Magit* (1951), 106 Cal.App.2d 163, 167 [234 P.2d 708].) ▮ "The reviewing court's power to declare an award of damages excessive exists only when from the facts the amount appears at first blush to suggest passion or prejudice on the part of the jury. There is no distinction when the review is of an award of exemplary rather than actual damages . . . . After an award has been approved by the trial court [as it was in the instant case] the reviewing court will hesitate to declare the amount excessive unless upon consideration of the entire record including the evidence it must be said that the award was the result of passion or prejudice." (*Finney* v. *Lockhart, supra.*) This we are not prepared to say is the situation herein.

The judgment against the defendant Figgs is affirmed and that against the defendant Duggan is reversed with direc-

tions. to enter judgment in his favor against plaintiffs; respondents to recover costs of appeal against the defendant Figgs and the appellant Duggan to recover costs of appeal against the respondents.

Wood (Parker), J., concurred.

SHINN, P. J.—I agree with the foregoing opinion. But I cannot understand why the trial judge denied the defendants' motion for a new trial. At the conclusion of defendants' argument for an instructed verdict the judge said: "They [the jurors] are the ones that have to decide it. *Could I, I am not impressed with the lawsuit, and I would resolve these conflicts in evidence in favor of the defendants. My hands are tied, but I can't do it.*" The motion for a directed verdict was properly denied since there was evidence that would have supported a verdict for the plaintiff. But if the judge believed that the conflicts in the evidence should be resolved in favor of defendants, it was his duty to grant their motion for a new trial. It has always been the law in this state that if the trial judge in ruling on a motion for a new trial believes that the verdict is contrary to the weight of the evidence, "The court is bound to grant a new trial and has no discretion to refuse it." (*Hawkins* v. *Reichert*, 28 Cal. 534.) However, in view of the possibility that the judge had changed his mind I do not see how we can go so far as to say that he neglected to weigh the evidence and to perform the extremely important duty of deciding whether the preponderance lay with the plaintiffs or the defendants.