[Civ. No. 45626. First Dist., Div. One. June 11, 1980.]

CHARLES E. WILSON et al., Plaintiffs and Respondents, v. EILEEN LEWIS, Defendant and Appellant.

COUNSEL

John A. Colistra for Defendant and Appellant.

John P. Dahl for Plaintiffs and Respondents.

OPINION

**ELKINGTON, J.**—Defendant Eileen Lewis appeals from a judgment awarding (1) plaintiffs Wilson (the Wilsons) damages for breach of a contract to sell a piece of residential property (the property), and (2) plaintiffs Eugene H. Upton dba Century 21 Upton Associates, Century 21 Upton Associates, Inc. (Century 21), real estate brokers, and Steven Anny, their salesman, a commission on the subject transaction.

Several issues are raised by the parties on the appeal. None of them relates to what we find to be the critical issue of the legal effect of the Wilsons' *conditional* and *postdated* "good faith" deposit check upon the subject transaction. Moreover, we observe that although the issue was raised by the pleadings, and evidence on the point was uncontroverted, it otherwise went unmentioned at the trial.

■ Although issues not raised at trial will ordinarily not be considered on appeal (see 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 276, pp. 4264-4265), it is settled law that where the point is presented, as here, by noncurable undisputed evidence, and raises a pure question of law, it may be so considered for the first time. (See *Hale* v. *Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512]; *Wong* v. *Di Grazia* (1963) 60 Cal.2d 525, 532 [35 Cal.Rptr. 241, 386 P.2d 817]; *Tyre* v. *Aetna Life Ins. Co.* (1960) 54 Cal.2d 399, 405 [6 Cal.Rptr. 13, 353 P.2d 725]; *Ward* v. *Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534]; *People* v. *Kitchens* (1956) 46 Cal.2d 260, 262 [294 P.2d 17]; *California Sch. Employees Assn.* v. *Sunnyvale Elementary Sch. Dist.* (1973) 36 Cal.App.3d 46, 56 [111 Cal.Rptr. 433]; *People* v. *Norwood* (1972) 26 Cal.App.3d 148, 152-153 [103 Cal.Rptr. 7]; *Bayside Timber Co.* v. *Board of Supervisors* (1971) 20 Cal.App.3d 1, 4-5 [97 Cal.Rptr. 431].)

Concluding that the issue concerns a question of law and a noncurable defect of substance affecting the public interest and the administration of justice, we invited the several parties to brief the subject. They have done so.

We conclude for the reasons we now state that the judgment should be reversed.

The manner in which California's licensed real estate brokers and salesmen conduct business is a matter of public interest and concern.

(*Riley* v. *Chambers* (1919) 181 Cal. 589 [185 P. 855, 8 A.L.R. 418], *passim; Brown* v. *Gordon* (1966) 240 Cal.App.2d 659, 665-666 [49 Cal.Rptr. 901]; *Buckley* v. *Savage* (1960) 184 Cal.App.2d 18, 26-28 [7 Cal.Rptr. 328] [cert. den., 366 U.S. 910 (6 L.Ed.2d 235, 81 S.Ct. 1086)]; *Koeberle* v. *Hotchkiss* (1935) 8 Cal.App.2d 634, 640 [48 P.2d 104].)

Century 21 and Anny were, in relation to the subject transaction, concededly the agents of the Wilsons who, as principals, were bound by their agents' authorized acts in negotiating for the purchase of the property. (See *Charles B. Webster Real Estate* v. *Rickard* (1971) 21 Cal. App.3d 612, 614-615 [98 Cal.Rptr. 559].) And according to all parties' theory of the case in the trial court, Century 21 and Anny were also the agents of defendant Lewis who according to plaintiffs' attorney had agreed to "pay a three percent commission if [Anny] brought in a ready, willing and able buyer." According to Anny, "I was acting on seller's behalf, on buyer's behalf; seller was paying me"; "I...would consider it...a dual fiduciary relationship."

■ "'The general rule is that [a broker] may represent both parties to a contract with [as here] their full knowledge and consent....'" (*Bonaccorso* v. *Kaplan* (1963) 218 Cal.App.2d 63, 68 [32 Cal.Rptr. 69]; *Cisco* v. *Van Lew* (1943) 60 Cal.App.2d 575, 585 [141 P.2d 433].) In such a case he "'is charged with the duty of fullest disclosure of all material facts concerning the transaction that might affect [each] principal's decision.'" (*Batson* v. *Strehlow* (1968) 68 Cal.2d 662, 675 [68 Cal.Rptr. 589, 441 P.2d 101].) And the burden is his, "to prove that he [so] acted with the utmost good faith...." (*Id.*, p. 675.)

Defendant Lewis wished to sell her property for $58,500 net to her, with the broker's commission, if any, to be paid by her, added to the purchase price. The Wilsons wished to purchase the property. They had signed and given to Anny one or two printed forms of "offer to buy real estate," which he "filled out after they left"; "they trusted him." They had also given him their *postdated check* for $500 payable to "Century 21 Upton"; they did not have sufficient funds in the drawee bank at the time to cover it, so they dated it February 14, 1977. The check had written upon it the statement, "Pending Inspection," a caption later explained by the Wilsons as meaning pending "the appraisal and the termite" inspections.

On February 11, 1977, Anny visited defendant Lewis with a filled out, and signed, offer of the Wilsons to buy her residence for $58,500. The offer, which was read to her, recited that Century 21 had: "Received from [the Wilsons] herein called Buyer, the sum of Five Hundred dollars ($500.00) evidenced by...personal check" to be held by Century 21 as a good faith deposit on the property's purchase price upon the offer's acceptance. The check was shown to defendant Lewis, but she was not told that it was postdated; nor was she informed of its *conditions* of "appraisal" and "termite" inspections. She "saw the check in his hand" but she had no recollection of "ever actually seeing the face of it." A discussion of about two hours ensued, at the end of which defendant Lewis finally signed an acceptance of the offer with an agreement to pay Century 21 a 3 percent commission on the transaction. That offer and its acceptance became what we shall hereafter term the agreement. When defendant Lewis had signed the agreement she asked Anny for the $500 deposit check but she was told by him that its delivery to her would be "improper." Nor had Anny, contrary to his usual practice, told her what the approximate net proceeds to her would be. The agreement as written, among other things, contemplated a Veterans Administration loan with the probable *seller's* obligation to pay an undetermined amount of monetary "points."

The next morning, February 12, 1977, defendant Lewis had second thoughts about the agreement and telephoned Anny "repudiating" her acceptance of it.

Several weeks later Century 21 wrote to defendant Lewis "asking if she would be willing to sell her house if they were able to obtain an offer of $61,000.00 from the Wilson's and to give [her] full disclosure in writing of the approximate net to her." She rejected the offer.

Thereafter the instant action was commenced by which the Wilsons sought damages for breach of the agreement, and Century 21 and Anny their agreed commission. Contemporaneously with the commencement of the action they filed a notice of lis pendens which constituted a cloud upon the property's title which apparently continues to this day. As noted, plaintiffs thereafter obtained judgment as prayed.

The Wilsons' offer filled in by Anny "after they left," and Anny orally, had represented to defendant Lewis that a good faith deposit *check* for $500 had been posted. ■ "A 'check'...is a draft drawn on a bank and payable on demand;..." (Cal.U.Com. Code, § 3104, subd.

(2)(b); and see *Kiekhoefer* v. *United States Nat. Bank* (1934) 2 Cal.2d 98, 103 [39 P.2d 807, 96 A.L.R. 1244].) ■ Its unqualified tender is a representation that there are sufficient funds to cover it on deposit with the drawee bank which will pay it instantly on demand. (See *People* v. *Poyet* (1972) 6 Cal.3d 530, 536 [99 Cal.Rptr. 758, 492 P.2d 1150]; *Raphael* v. *People's Bank of Benicia* (1919) 45 Cal.App. 115, 117 [187 P. 53]; *State* v. *Etheridge* (1968) 74 Wn.2d 102 [443 P.2d 536, 540]; 6A Words and Phrases (1966) Check, pp. 517-518; see also authority there collected.) ■ The presentation of a postdated check is not subject to the civil or penal sanctions normally attending the knowing tender of a check without sufficient funds for a valuable consideration. (*People* v. *Bercovitz* (1912) 163 Cal. 636, 637-638 [126 P. 479]; *State* v. *Stout* (1968) 8 Ariz.App. 545 [448 P.2d 115, 117].)

A *postdated check* is not such a check as was represented by Anny and the Wilsons' offer. "Ordinarily [as here] its purpose is to obtain an extension of credit." (*Commonwealth* v. *Kelinson* (1962) 199 Pa.Super. 135 [184 A.2d 374, 377]; *Lovell* v. *Eaton* (1925) 99 Vt. 255 [133 A. 742, 743].) ■ "'Where the instrument offered by the buyer is not a payment but a credit instrument such as a note or a check *post dated by even one day*, the seller's acceptance of the instrument insofar as third parties are concerned, amounts to a delivery on credit....'" (Italics added; *Commonwealth* v. *Kelinson, supra*, p. 377.) In accepting a postdated check the payee "is looking to the promise of payment in the future" (*id.*, p. 376); it is no more than "a mere promise to discharge a present obligation at a future date" (*People* v. *Mazeloff* (1930) 229 App.Div. 451 [242 N.Y.S. 623, 625]). And it has been held that a "postdated check being irregular and not in due course of business, he who takes it holds it subject to that objection." (*Wilson* v. *Mid-West State Bank* (1922) 193 Iowa 311 [186 N.W. 891, 21 A.L.R. 229].)

Furthermore, the "appraisal" and "termite" inspection conditions of the $500 deposit check, knowledge of which was withheld from defendant Lewis, were contrary to the terms of the agreement as represented to her. Those otherwise unannounced conditions subsequent, if not satisfactorily met, would have permitted the Wilsons to withdraw from the transaction.

■ "Where there is a duty to disclose, the disclosure must be full and complete, and any material concealment or misrepresentation will amount to fraud...." (*Pashley* v. *Pacific Elec. Ry. Co.* (1944) 25 Cal.

2d 226, 235 [153 P.2d 325].) And a real estate agent undeniably owes a "fiduciary obligation" to his principal "to disclose all material facts which might affect her decision with regard to the transaction...." (*Pepitone* v. *Russo* (1976) 64 Cal.App.3d 685, 688 [134 Cal.Rptr. 709]; and see *Batson* v. *Strehlow, supra,* 68 Cal.2d 662, 674-676.)

 There was accordingly a failure of the consideration due defendant Lewis as to all of the plaintiffs, and a material misrepresentation to or concealment from her as to Century 21 and Anny.

Under the circumstances defendant Lewis was entitled to rescind the agreement as to all plaintiffs. "A party to a contract may rescind the contract.... (1) If the consent of the party rescinding...was... obtained through...fraud...exercised by...the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party. (2) If the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds.... (6) If the public interest will be prejudiced by permitting the contract to stand." (Civ. Code, § 1689; and see *Security-First Nat. Bank* v. *Earp* (1942) 19 Cal.2d 774, 777 [122 P.2d 900]; *Stewart* v. *Crowley* (1931) 213 Cal. 694, 700 [3 P.2d 562]; *Taliaferro* v. *Davis* (1963) 216 Cal.App.2d 398, 410-412 [31 Cal.Rptr. 164]; *Bonadelle Construction Co.* v. *Hernandez* (1959) 169 Cal.App.2d 396, 399 [337 P.2d 85].)

 And it is notable that *"if facts exist that justify a rescission* by one party, and he declares a rescission in some effectual manner, he terminates the contract.'" (Italics added; *Holmes* v. *Steele* (1969) 269 Cal.App.2d 675, 677 [75 Cal.Rptr. 216].) "'One may justify an asserted rescission by proving *that at the time there was an adequate cause although it did not become known to him until later.'"* (Italics added; *Earl* v. *Saks & Co.* (1951) 36 Cal.2d 602, 609 [226 P.2d 340].)

 Defendant Lewis' prompt notice to Anny and through him to his principals, Century 21 and the Wilsons, "repudiating" her acceptance of the agreement was sufficient. Rescission is effected, as relevant, by giving "notice of rescission to the party as to whom he rescinds;..." (Civ. Code, § 1691.) "'"It is not necessary that the notice to rescind shall be formal and explicit; it is sufficient that notice shall be given to the other party which clearly shows the intention of the person rescinding to consider the contract at an end."'" (*Hull* v. *Ray* (1930) 211 Cal. 164, 167 [294 P. 700]; and see *Whitney Inv. Co.*

v. *Westview Dev. Co.* (1969) 273 Cal.App.2d 594, 603 [78 Cal.Rptr. 302]; *Worthen* v. *Jackson* (1956) 139 Cal.App.2d 615, 618 [293 P.2d 797].)

■ The agreement having been properly rescinded by defendant Lewis according to law, none of the plaintiffs held a cause of action for its enforcement or damages for its alleged breach.

It is further noted that the agreement contained the following clause: "If any party to this agreement, *including broker*, shall institute any legal action against any other party to this agreement, the prevailing party shall be entitled to court costs and reasonable attorney's fees in addition to any other judgment of the court." (Italics added.) The provision gives contractual effect to Civil Code section 1717.

Recently the state's high court in *International Industries, Inc.* v. *Olen* (1978) 21 Cal.3d 218, 224 [145 Cal.Rptr. 691, 577 P.2d 1031], held that such "contractual provisions for attorney fees will not be inflexibly enforced and that the form of the judgment is not necessarily controlling, but must give way to equitable considerations." In our opinion equitable considerations of the instant case mandate that such attorney fees be the liability of plaintiffs Century 21 and Anny only, on the basis of comparative fault.

It is found unnecessary to consider other points raised by the parties.

Further, we have in no way passed upon the merits of such additional rights, if any, as defendant Lewis may have in respect of the subject transaction.

The judgment is reversed. The superior court will fix and award reasonable attorney fees, for all services in the superior court and on this appeal, in favor of defendant Lewis and against plaintiffs Century 21 and Anny, and thereafter enter judgment in favor of defendant Lewis against all plaintiffs.

Racanelli, P. J., and Newsom, J., concurred.