[Civ. No. 13725. Fourth Dist., Div. Two. Oct. 1, 1975.]

JAMES K. GUTHRIE, as Trustee, etc., et al., Plaintiffs and Appellants, v. TIMES-MIRROR COMPANY, Defendant and Respondent.

**COUNSEL**

Kaplan, Livingston, Goodwin, Berkowitz & Selvin, Herman F. Selvin and Peter C. Smoot for Plaintiffs and Appellants.

Gibson, Dunn & Crutcher, Julian O. von Kalinowski and Arthur L. Sherwood for Defendant and Respondent.

## OPINION

**TAMURA, J.**—This action arises out of the sale of The Sun Company of San Bernardino (Sun), a newspaper publishing company, to The Times-Mirror Company (Times).[1] Plaintiffs (former Sun shareholders) in their own behalf and on behalf of other former Sun shareholders, seek to recover the profits and gains allegedly realized by the Times by virtue of its acquisition and subsequent resale of the Sun. The trial court sustained, without leave to amend, a general demurrer to the third amended complaint. Plaintiffs appeal from the ensuing judgment of dismissal.

The pertinent allegations of the third amended complaint are as follows:

In June 1964, plaintiffs and other Sun shareholders sold all of the capital stock in Sun to the Times for $15 million cash. Shortly after the sale, the United States brought an antitrust suit against the Times. In October 1967, the United States District Court rendered its judgment decreeing that the Times' control of the Sun properties through stock ownership violated section 7 of the Clayton Act. (*United States* v. *Times Mirror Company,* 274 F.Supp. 606.) The judgment was affirmed by the United States Supreme Court and became final in June 1968. In January 1969, pursuant to the final judgment and with approval of the United States District Court, the Times sold the Sun to the Gannett Corporation for $17.7 million. The Times retained for itself other property and assets of the Sun worth $1.8 million.

Plaintiffs alleged that at the time the contract was entered into "all parties to said contract believed and were under the apprehension that the contract was not in violation of Federal antitrust laws"; the Times so represented to plaintiffs, stating it had received legal advice to that effect

---

[1]The sale in question was actually made to The TMC Publishing Company, a wholly owned Times' subsidiary, organized for the specific purpose of acquiring the Sun. After the purchase, the Times caused TMC to merge with Sun and TMC changed its name to The Sun Company of San Bernardino. Throughout this opinion we shall, for convenience, refer to the sale as being between plaintiffs and the Times.

from competent legal counsel whose identity was disclosed to plaintiffs; in reliance on said representation and because of the belief induced thereby, plaintiffs executed the contract; the parties were "mistaken and under a misapprehension as to the law applicable to said contract, in that said contract, in fact, but unknown to the parties, was an unlawful one and in violation of the Federal antitrust laws."

It is further alleged that plaintiffs contemplated and expected that the Times would conduct the Sun "in accordance with social, political and economic policies coinciding with plaintiffs' own views"; but for that expectation and the mistake and misapprehension alleged, plaintiffs would not have executed the contract; plaintiffs' expectations and purposes have been "frustrated" because the Sun has not been conducted by the Times since January 1969.

Plaintiffs alleged that before the sale the Sun had always shown a profit and had paid its shareholders annual dividends of $100 per share; that plaintiffs no longer receive these dividends; and that they have lost the benefit of the enhancement in the market value of their shares. The prayer was for rescission and for recovery of the sum of $4.5 million (the $2.7 million alleged profit on the resale of the newspaper plus $1.8 million as the value of the Sun's assets retained by the Times).

The Times demurred on the following grounds: (1) Failure to state facts sufficient to constitute a cause of action; (2) lack of jurisdiction of the subject matter or action; (3) defect and misjoinder of parties plaintiff; and (4) uncertainty. The court sustained the demurrer without leave to amend on the ground the complaint failed to state facts sufficient to constitute a cause of action.

Plaintiffs urge they have alleged facts entitling them to the relief sought on cne or more of the following theories: Mutual mistake of law, constructive fraud, or innocent misrepresentation. We have concluded that plaintiffs have failed to plead a cause of action based on any of the proffered theories and that the judgment of dismissal must be affirmed.

I

The principal theory on which plaintiffs predicate their right to rescind and to have the Times adjudged to be an involuntary trustee of the alleged profits and gains from the resale of the Sun is mutual mistake

of law. The substance of the allegations upon which they rely is that both parties contracted under the mistaken belief that the contract was not in violation of the federal antitrust laws when, in fact, unbeknownst to them it was.

In California a mutual mistake, whether of fact or law, which affects an essential element of the contract and is harmful to one of the parties is subject to rescission by the party harmed. (Civ. Code, §§ 1689, subd. (b)(1); 1567, subd. 5; 1576; 1578. *Hannah* v. *Steinman*, 159 Cal. 142 [112 P. 1094] *Hartwig* v. *Clark*, 138 Cal. 668 [72 P. 149]; *Adams* v. *Heinsch*, 89 Cal.App.2d 300 [200 P.2d 796]; *Spear* v. *Farwell*, 5 Cal.App.2d 111 [42 P.2d 391]; 1 Witkin, Summary of Cal. Law, §§ 293, 302. See Rest., Contracts, § 502; 3 Corbin, Contracts, § 611; Williston, Contracts (3d ed.) § 1593.)

The Times urges that (1) the alleged mistake is not the kind of mistake which the law recognizes as a ground for rescission and (2) plaintiffs have failed to show that they were harmed by the mistake. From the analysis which follows, we have concluded that although the complaint purports to allege a mutual mistake of law as defined in Civil Code section 1578,[2] it is fatally defective because it fails to show that plaintiffs were injured by the alleged mistake.

Mistake is said to fall generally into two categories: (1) A person may know the specific facts upon which his rights depend but be ignorant of the rules of law the courts will apply to those facts,[3] or (2) a person may

---

[2]Civil Code section 1578 provides:

"Mistake of law constitutes a mistake, within the meaning of this Article, only when it arises from:

"1. A misapprehension of the law by all parties, all supposing that they knew and understood it, and all making substantially the same mistake as to the law; or,

"2. A misapprehension of the law by one party, of which the others are aware at the time of contracting, but which they do not rectify."

[3]The cases cited by plaintiffs are examples of situations where the parties, though aware of the facts, contracted in ignorance of the applicable rules of law. (*Hannah* v. *Steinman, supra,* 159 Cal. 142 [ignorance of the existence of a city ordinance prohibiting wooden structures on the leased premises]; *Adams* v. *Heinsch, supra,* 89 Cal.App.2d 300 [mistaken belief that OPA regulations were not applicable to a lease of the premises in question]; *Hartwig* v. *Clark, supra,* 138 Cal. 668 [ignorance by the parties of the statute of limitations barring recovery on a debt secured by a mortgage]; *Spear* v. *Farwell, supra,* 5 Cal.App.2d 111 [mistaken belief by husband and wife that bank signature card executed by wife permitted husband to draw on the wife's account only after her death instead of creating a joint tenancy]; *Stock* v. *Meek,* 35 Cal.2d 809 [221 P.2d 15] [ignorance of a city building and fire regulation precluding purchaser of space in apartment building from exercising exclusive occupancy of the space]; *Benson* v. *Bunting,* 127 Cal. 532 [59 P. 991] [ignorance of the applicable period of redemption following a mortgage foreclosure].)

know the applicable legal rules but be mistaken as to the specific facts to which the rules are to be applied. (3 Corbin, Contracts, § 616, pp. 746-748.) The instant case does not fit neatly into either category. The mistake is not alleged to have arisen out of a mistake concerning the existence of any specific operative facts or out of an ignorance of the pertinent legal rules. Plaintiffs' earlier verified complaint alleged that before the parties contracted they received advice of "competent legal counsel" that the contract was not in violation of the federal antitrust laws.[4] The Times therefore urges, in substance, that it must be inferred that the parties contracted, not in ignorance of the applicable legal rules or as to the existence of any operative facts, but rather on the basis of a mistaken judgment as to how a court would apply the legal rules to the facts. It is urged that ordinarily an error in judgment concerning an uncertain future occurrence is not a basis for avoiding a contract for mistake, citing *Taylor v. Taylor,* 66 Cal.App.2d 390, 397 [152 P.2d 480].

The Times further contends that the complaint reveals that at the time they contracted the parties were aware that the Times' acquisition and control of the Sun presented a possible or potential federal antitrust problem and that they therefore assumed the risk that their counsel's prophecy as to what a court would do might be wrong.

Where parties are aware at the time the contract is entered into that a doubt exists in regard to a certain matter and contract on that assumption, the risk of the existence of the doubtful matter is assumed as an element of the bargain. (Rest., Contracts, § 502, com. F. See *Hannah v. Steinman, supra,* 159 Cal. 142, 147; *Moreno Mut. Irr. Co.* v. *Beaumont Irr. Dist.,* 94 Cal.App.2d 766, 783 [211 P.2d 928].) Otherwise stated, the kind of mistake which renders a contract voidable does not include "mistakes as to matters which the contracting parties had in mind as possibilities and as to the existence of which they took the risk." (Williston, Contracts (3d ed.) § 1543. See *Raddue* v. *LeSage,* 138 Cal.App.2d 852, 855 [292 P.2d 522].)

It would be inappropriate, however, at the demurrer stage to determine the validity of the Times' contention that the kind of mistake

[4]The allegations referred to are contained in plaintiffs' verified second amended complaint but omitted, without explanation, from the third amended complaint. In the absence of a satisfactory explanation, a defect in a verified complaint cannot be avoided by filing an amended complaint omitting the allegation rendering the complaint defective. (*Reichert* v. *General Ins. Co.,* 68 Cal.2d 822, 836 [69 Cal.Rptr. 321, 442 P.2d 377]; *Wennerholm* v. *Stanford Univ. Sch. of Med.,* 20 Cal.2d 713, 716 [128 P.2d 522, 141 A.L.R. 1358].)

alleged does not render the contract voidable. It cannot be said as an abstract legal proposition that a mistaken judgment, with knowledge of the law and the facts, concerning the legal effect a court will give to a transaction cannot form the basis for rescission for mutual mistake of law. (See 3 Corbin, pp. 753-754.) To predict what a court will do in a complicated field such as antitrust may be a risky venture even for the most astute lawyer having knowledge of all the pertinent facts, applicable legal rules and apposite judicial precedents, but unless we know the nature of the legal advice on which the parties relied and their state of mind at the time they contracted, we cannot infer solely from the facts alleged that the parties doubted the validity of the transaction and therefore assumed the risk that the contract might be found to be violative of the federal antitrust laws. Although, as the Times suggests, it may be inferred that the parties sought and obtained legal advice *before they contracted* because they were concerned about the potential antitrust implications of the transactions, any doubts the parties may have had may have been laid to rest after their consultation with legal counsel.

We therefore conclude that construing the complaint liberally, as we must, it pleaded a mistake of law sufficient to survive a general demurrer.

The complaint, however, is fatally defective because it fails to set forth facts showing that plaintiffs were harmed or injured as a result of the claimed mistake. ■ A contract is voidable for mistake only if enforcement would be materially harmful or more onerous to the party seeking avoidance than it would have been had the law or the facts been as believed. (Rest., Contracts, § 502; Williston, Contracts (3d ed.) § 1593, pp. 578-579; 3 Corbin, Contracts, § 611, p. 700.) This is a necessary corollary of the principle that the mistake, whether of law or fact, must materially affect an essential element of the contract. (*Hannah* v. *Steinman, supra,* 159 Cal. 142, 147-149; *Wood* v. *Kalbaugh,* 39 Cal.App.3d 926, 932 [114 Cal.Rptr. 673]; *Bellwood Discount Corp.* v. *Empire Steel Buildings Co.,* 175 Cal.App.2d 432, 435 [346 P.2d 467]; *Vickerson* v. *Frey,* 100 Cal.App.2d 621, 627 [224 P.2d 126].) A party seeking to rescind a contract must show that he has suffered material injury or prejudice although he need not show pecuniary loss. (*Hefferan* v. *Freebairn,* 34 Cal.2d 715, 721 [214 P.2d 386]; *Darrow* v. *Houlihan,* 205 Cal. 771, 774 [272 P. 1049]; *Munson* v. *Fishburn,* 183 Cal. 206, 217 [190 P. 808]; *Thomas* v. *Krug,* 139 Cal.App.2d Supp. 941, 944 [294 P.2d 785].)

■ Had the "law" been as the parties supposed, plaintiffs would have been no better off. The alleged mistake did not affect the

consideration for which plaintiffs contracted; they received the $15 million cash for which they agreed to sell the Sun. Nor did the federal antitrust suit render performance more onerous to plaintiffs or otherwise materially injure them. Performance of the contract was not contingent upon the outcome of the antitrust suit; plaintiffs were not parties to that action; the federal court did not determine that the stock sale constituted a contract, combination, or conspiracy in restraint of trade in violation of section 1 of the Sherman Act; and the federal court decree did not nullify or undo plaintiffs' sale of the Sun to the Times. In short, the alleged mistake concerning the legal consequences which flowed from the Times' control of the Sun through stock acquisition had no effect upon the intrinsic merits of the contract insofar as plaintiffs were concerned.[5] Plaintiffs' interests were not injuriously affected by the alleged mistake of law.

For the first time in the third amended complaint, plaintiffs allege they "contemplated and expected" that if they sold the Sun to the Times, the paper would be conducted "in accordance with social, political and economic policies coinciding with plaintiffs' own views; but for this expectation they would not have executed the contract; as a result of the divestiture and sale of the Sun by the Times, plaintiffs' expectations have been frustrated." Those allegations fail to show a legally cognizable harm warranting rescission.

The instant transaction was between sophisticated parties with benefit of competent legal advice. It may be inferred that if the Times' continued ownership of the Sun was of such overriding concern to plaintiffs and an essential element of the bargain, a provision covering that subject would have been included in the contract. (Cf. *Lloyd* v. *Murphy*, 25 Cal.2d 48, 54 [153 P.2d 47].) There is no allegation that such

---

[5]In *United States* v. *Times Mirror Company, supra,* 274 F.Supp. 606, the court determined that the effect of the Times' acquisition of the Sun was to substantially lessen competition in the daily newspaper business in Southern California in violation of section 7 of the Clayton Act. That section provides in pertinent part:

"No corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital . . . of another corporation engaged also in commerce, where in any line of commerce in any section of the country the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly."

Although the government had also contended the Times' acquisition of the Sun violated section 1 of the Sherman Act, the court determined it was unnecessary to pass upon that charge. Section 1 of the Sherman Act provides in pertinent part:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

a provision was included. Nor is it alleged that the Times shared plaintiffs' assumption that the Sun was to be operated in accordance with plaintiffs' political, social, and economic philosophies or that there was an understanding, implicit or otherwise, that the Times would not later resell the paper. Had the resale been made by the Times in furtherance of its own economic interest absent compulsion of a federal court divestiture order, plaintiffs would certainly not have been in a position to claim injury. The fact that the resale was made pursuant to the divestiture order did not transform plaintiffs' disappointment into a material injury. Plaintiffs' hope regarding the future operation of the Sun by the Times, even if they would not have sold to the Times had it not been for their alleged expectation, did not "affect the substance of the whole transaction." (*Hannah* v. *Steinman, supra,* 159 Cal. 142, 147-149.) To permit the executed contract to be undone on the basis of plaintiffs' uncommunicated hope or expectation would undermine the legitimate public interest in the preservation of contractual stability.[6] (See *Oppenheimer* v. *Clunie,* 142 Cal. 313 [75 P. 899].)

Plaintiffs' reliance upon *Earl* v. *Saks & Co.,* 36 Cal.2d 602 [226 P.2d 340] [Traynor, J. & Edmonds, J., dissenting] is misplaced. *Saks* involved rescission for *actual fraud.* Plaintiff was induced by fraudulent representations of his girl friend and of the department store to buy a fur coat priced at $5,000 for $4,000. He paid $4,000 for the coat on the representation that was the full price when in fact his girl friend, with the connivance of the store, paid an additional $1,000. Although plaintiff got what he expected, to wit, the fur coat, he was permitted to rescind. The court reasoned that since plaintiff's motive in buying the coat was to make a fully paid gift, the social interest in "not having one *intentionally take advantage of another*" outweighed society's interest in maintaining the stability of contracts.[7] (Italics supplied; 36 Cal.2d 602, 612.) In the case at bench, plaintiffs disavow any suggestion of actual fraud on the part of the Times.

---

[6]Other than the assertion that plaintiffs' expectation has been frustrated, there is no allegation that under its present ownership and management the Sun is not being conducted in accordance with "social, political and economic policies" coinciding with plaintiffs' views.

[7]Nor do the facts in the case at bench establish plaintiffs' right to rescission under the doctrine of frustration. The doctrine of frustration applies when performance is possible but a supervening fortuitous event has destroyed the expected nature of performance to the party seeking avoidance; the doctrine is limited to cases of extreme hardship where the subsequent unanticipated event almost totally destroys the value of the consideration to be rendered. (*Lloyd* v. *Murphy, supra,* 25 Cal.2d 48.) The facts alleged in the case at bench fall far short of pleading a case for the application of the doctrine of frustration.

It is unnecessary to discuss other cases cited by the parties. As Professor Corbin has cautioned, because of the number and variety of factors to be considered, cases involving mistake are difficult to classify and it is perilous to construct a rule of law from them unless it be so circumscribed as to be applicable to a particular combination of many factors. (3 Corbin, Contracts, § 597, p. 583; Note, *Rescission of a Contract for a Mutual Mistake of Fact,* 35 Harv.L.Rev. 757, 761.) Suffice it to say that in the case at bench lack of harm or injury to plaintiffs precludes rescission for the alleged mistake of law.

## II

 Plaintiffs' contention that the complaint states a cause of action for "constructive fraud" is equally without merit.

 Constructive fraud is defined in Civil Code section 1573 as that which consists: "1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; . . .." The complaint fails to allege the statutory elements of constructive fraud.

The breach of duty referred to in Civil Code section 1573 must be one created by a confidential relationship; such a relationship is one of the facts constituting the fraud. (*Odorizzi* v. *Bloomfield School Dist.,* 246 Cal.App.2d 123, 129 [54 Cal.Rptr. 533]; *Crocker-Anglo Nat. Bank* v. *Kuchman,* 224 Cal.App.2d 490, 494 [36 Cal.Rptr. 806]. See *Goodwin* v. *Wolpe,* 240 Cal.App.2d 874, 878 [50 Cal.Rptr. 55].) The facts alleged in the instant case do not show the existence of a confidential relationship between plaintiffs and the Times.

The cases cited by plaintiffs do not stand for the proposition that constructive fraud may be established without allegation and proof of the existence of a confidential relationship. In *Agnew* v. *Cronin,* 148 Cal.App.2d 117 [306 P.2d 527], a garnishee was regarded as a trustee for those claiming an interest in the property. In *Boyd* v. *Bevilacqua,* 247 Cal.App.2d 272 [55 Cal.Rptr. 610], members of a joint venture were held to be in a fiduciary relationship with one another. Plaintiffs' citation of *Rogers* v. *Warden,* 20 Cal.2d 286 [125 P.2d 7], for the proposition that even in the absence of a confidential relationship and hence of a duty to speak, one choosing to speak must speak truthfully and fully is likewise inapposite. *Rogers* involved actual fraud in the form of an intentional

concealment of material facts. In the case at bench, plaintiffs do not claim that the Times was guilty of actual fraud either by intentional misrepresentation or intentional concealment of a material fact.

In any event, plaintiffs' failure to allege facts showing injury or prejudice is equally fatal to this cause of action.

### III

Finally, plaintiffs urge that they have alleged a cause of action for rescission based upon innocent misrepresentation.

Innocent misrepresentation, though not specifically enumerated as a ground for rescission under Civil Code section 1689, has been held to be a type of mistake under subdivision (b)(1) of that section and hence a ground for rescission. (*Crocker-Anglo Nat. Bank* v. *Kuchman, supra,* 224 Cal.App.2d 490, 495-496.)

In the case at bench the facts well pleaded fail to allege a misrepresentation of fact or law. The allegations, fairly construed, are simply to the effect that the Times represented that it believed and was under the apprehension that the contract whereby it would acquire control of the Sun through stock ownership would not be violative of the federal antitrust laws and that it had obtained advice of competent legal counsel to that effect. Plaintiffs have not alleged that the Times misrepresented its belief or the legal advice it had received. Indeed, in their earlier verified complaint, plaintiffs alleged that both parties sought and received advice from competent legal counsel that the contract was not violative of federal antitrust laws.

Even assuming arguendo that plaintiffs have alleged an innocent misrepresentation, their failure to allege facts showing that they were materially prejudiced or harmed is fatal to the proffered theory of rescission for innocent misrepresentation.

### IV

For the reasons stated we conclude that the third amended complaint fails to allege a cause of action on any of the theories advanced by plaintiffs and that the trial court properly sustained the general demurrer. However, plaintiffs urge as an additional ground for reversal that the court erred in sustaining the demurrer without further leave to amend.

The record discloses that plaintiffs made a motion to file a fourth amended complaint but that the motion was ordered off calendar because a judgment of dismissal had already been entered. The proposed unverified fourth amended complaint was identical to the third amended complaint except for the addition of allegations that the Times was familiar with the nature and extent of the business competition between newspapers in the San Bernardino area as well as the nature and extent of its own publishing business, its financial resources and the purpose for which it sought acquisition of the Sun; and that plaintiffs had no knowledge of those matters but knew and believed the Times' knowledge was superior.

Even were we to treat those allegations as an attempt to aver ignorance or mistake on plaintiffs' part of the existence of material operative facts on which the federal antitrust laws would operate and hence fortify the cause of action based upon mutual mistake of law, the proposed complaint is still fatally defective for its failure to allege facts showing material harm or prejudice to plaintiffs. No showing has been made that plaintiffs could, if permitted to further amend, cure that deficiency.

In the foregoing circumstances we find no abuse of discretion in the trial court's order sustaining the general demurrer without further leave to amend.

### Conclusion

For the foregoing reasons we conclude that the trial court's ruling was correct. The judgment of dismissal is affirmed.[8]

Gardner, P. J., and McDaniel, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 17, 1975.

---

[8]The Times contends that the demurrer was properly sustained for the following additional reasons: (1) The supremacy clause of the federal Constitution deprives a state court of jurisdiction or power to order rescission in the face of the federal court decision ordering divestiture; (2) the action is barred by laches and waivers; and (3) the action is barred by the statute of limitations. In view of our conclusion that the demurrer was properly sustained for the reasons expressed in our opinion, it is unnecessary to consider the additional grounds advanced by the Times in support of the trial court's order.