111 F.3d 137
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ASSOCIATED INTERNATIONAL INSURANCE COMPANY,
Plaintiff-counter-defendant-Appellant,
v.
ODYSSEY REINSURANCE CORPORATION, Defendant-counter-claimant-Appellee.
 No. 95-56374.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 5, 1997.
Decided April 2, 1997.
 
 1
 Before: D.W. NELSON, TROTT, Circuit Judges, and BRYAN,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Associated International Insurance Company ("AIIC") appeals the district court's grant of summary judgment in favor of the defendant, Skandia America Reinsurance Corporation ("Skandia"[1]). AIIC argues that the district court erred when it held that the Skandia reinsurance certificate absolutely excluded any asbestos-related liability, and when the court denied AIIC's partial motion for summary judgment on the ground that Skandia was not liable to AIIC for any asbestos claims. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.
 
 
 4
 Owens-Corning Fiberglass Corporation ("OCF") manufactured and distributed products containing asbestos. In 1978, OCF purchased an "excess indemnity (umbrella) policy" from Aetna Insurance Company. The Aetna umbrella policy "followed form"[2] to designated underlying policies and contained an endorsement that expressly excluded coverage for asbestos-related claims asserted against certain named OCF entities (Endorsement No. 10.) The endorsement provided, in part: "Exclusion of Asbestos--This insurance does not apply to bodily injury or property damage which arises in whole or in part ... out of asbestos used, handled, manufactured, sold or distributed by either Lloyd A. Fry Roofing Company or Trumbull Asphalt Company or Fry Division or Trumbull Division...." Apparently, the Fry Roofing Company and the Trumbull Asphalt Company are OCF entities.
 
 
 5
 OCF asked AIIC to write a second excess umbrella insurance policy that would provide coverage above the amount insured by the Aetna umbrella insurance policy. AIIC, through Edward Duncan, its authorized underwriter, asked appellee Skandia to reinsure a portion of the OCF risk.
 
 
 6
 Both parties rely on the Skandia policy and on the testimony of AIIC's underwriter, Edward Duncan, to establish the scope of Skandia's reinsurance coverage. Review of Mr. Duncan's deposition testimony indicates, however, that there are material issues of fact regarding the intent of the parties regarding the reinsurance coverage.
 
 
 7
 On March 9, 1979, AIIC issued a binder for the OCF excess umbrella liability insurance policy that followed form to "underlying umbrella concurrency with underlying exclusion of ... asbestos." The "underlying exclusion" was apparently a reference to Endorsement 10. On March 14, 1979, AIIC issued its Excess Liability Policy to OCF, which followed form to the underlying Aetna umbrella policy without reference to asbestos.
 
 
 8
 On March 28, 1979, Skandia issued its reinsurance Certificate, which defined AIIC as the "Ceding Company" and described AIIC's policy as "FOLLOWING FORM EXCESS COMMERCIAL UMBRELLA LIABILITY COVERAGE EXCLUDING THE FOLLOWING 1) AIRCRAFT PRODUCTS 2) ASBESTOS 3) MARITIME 4) JOINT VENTURE AND 5) WRAP UPS." The "General Conditions" of the Skandia reinsurance policy provided:
 
 
 9
 Skandia's liability under this Casualty Facultative Reinsurance Certificate ("Certificate") shall follow the ceding Company's ("Company") liability in accordance with the terms and conditions of the policy reinsured hereunder except with respect to those terms and/or conditions as may be inconsistent with the terms of this Certificate. It shall be the duty of the Company to notify Skandia, promptly, of any changes in the policy reinsured hereunder. Notwithstanding the foregoing, Skandia and the Company hereby agree that the reinsurance hereunder is subject to the (a) Standard War Exclusion Clause or Clauses; (b) Nuclear Exclusion Clause-Physical Damage-Reinsurance; and (c) Nuclear Exclusion Clause-Liability-Reinsurance.
 
 
 10
 On July 23, 1979, AIIC received a letter from its underwriter and an attached letter (hereinafter the "OCF letter"), which stated that OCF manufactured asbestos products at their "Berlin, New Jersey, plant," OCF used asbestos in the manufacture of resins and coatings materials, and OCF's "Contracting Division" removed old insulation containing asbestos. It is uncertain whether the OCF entities and activities mentioned in the letter are inconsistent with Endorsement No. 10.
 
 
 11
 AIIC forwarded this OCF letter to Skandia on July 30, 1979. Skandia did not seek to rescind the certificate nor did it offer to return the insurance premium until after this lawsuit was started in 1994.
 
 
 12
 Beginning in 1980, numerous asbestos-related claims were asserted against OCF. It is unclear when AIIC learned of the claims, but it did not communicate with Skandia about the claims until 1990.
 
 
 13
 OCF sought legal defense and indemnification from its insurers, including AIIC. AIIC refused to indemnify OCF against the asbestos claims on the ground that OCF misrepresented the scope of its asbestos exposure. A lawsuit ensued in Ohio state court, and AIIC was found liable to OCF. AIIC then sought indemnification from Skandia under the reinsurance certificate. Skandia denied the AIIC claim, on the ground that Section A of the Certificate contained an absolute asbestos liability exclusion.
 
 
 14
 AIIC brought this suit against Skandia, seeking damages for breach of contract and a declaration that the Skandia Certificate obligates Skandia to provide reinsurance coverage for the asbestos claims. Skandia denied liability on the grounds that the Certificate contained an absolute asbestos liability exclusion, and that AIIC's alleged misrepresentations and the parties' mutual mistake barred AIIC's claims. Skandia counterclaimed for a declaration that it was not liable for asbestos reinsurance coverage under the Certificate, and for rescission and reformation.
 
 
 15
 AIIC moved for partial summary judgment on its declaratory relief claim. Skandia moved for summary judgment of dismissal on the grounds that 1) the Certificate excluded all asbestos reinsurance coverage; 2) AIIC's claims were barred by AIIC's misrepresentations regarding the scope of the OCF asbestos liability and by the parties' mutual mistake regarding such liability; and 3) AIIC failed to promptly notify Skandia of the OCF's asbestos claims.
 
 
 16
 The district court granted summary judgment of dismissal in favor of Skandia and denied AIIC's partial motion for summary judgment. AIIC filed a timely notice of appeal.
 
 
 17
 We reverse and remand.
 
 I.
 
 18
 We review a grant of summary judgment de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). We must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact for trial and whether the district court correctly applied the relevant substantive law. Id.
 
 II.
 
 19
 The first issue presented[3] is whether Skandia is entitled to summary judgment. Skandia asserts that it is entitled to summary judgment on the basis that (A) the Certificate contained an absolute asbestos exclusion; (B) the Certificate is unenforceable because AIIC failed to satisfy a condition precedent; (C) the Certificate is unenforceable because of mutual mistake and misrepresentation; and (D) the Certificate is unenforceable because AIIC failed to provide timely notice of claims.
 
 A. Interpretation of the Certificate
 
 20
 The overriding goal of contract interpretation is to give effect to the parties' mutual intentions as of the time of contracting. Ticor Title Ins. Co. v. Employers Ins. of Wausau, 48 Cal.Rptr.2d 368, 373 (Cal.Ct.App.1995) (citing Cal.Civ.Code § 1636.) Where contract language is clear and explicit and does not lead to an absurd result, the court must determine the parties' intent from the written provisions of the contract and may go no further. AIU Ins. Co. v. Superior Court, 799 P.2d 1253, 1264 (Cal.1990); Cal.Civ.Code §§ 1638, 1639. The words of a contract generally are to be understood in their ordinary and popular sense unless the parties use them in a technical sense or "a special meaning is given to them by usage." Ticor, 48 Cal.Rptr.2d at 373 (quoting Cal.Civ.Code § 1644).
 
 
 21
 If, however, the terms of a contract are ambiguous or uncertain, the court must interpret the promise "in the sense in which the promisor believed, at the time of making it, that the promisee understood it." Cal.Civ.Code § 1649. This rule, as applied to a promise of coverage in an insurance policy, protects "the objectively reasonable expectations of the insured." Bank of the West v. Superior Court, 833 P.2d 545, 552 (Cal.1992) (citing AIU Ins. Co., 799 P.2d at 1264). If use of this rule does not eliminate the uncertainty then the court "construe[s] the applicable language against the insurer, the drafter who created the uncertainty." Ticor, 48 Cal.Rptr.2d at 373.
 
 
 22
 "A policy provision is ambiguous if it is capable of more than one reasonable construction." Bank of the West, 833 P.2d at 552 (citing Producers Dairy Delivery Co. v. Sentry Ins. Co., 718 P.2d 920 (Cal.1986)). The court should not, however, strain the policy language to create an ambiguity, but should construe the provision in relation to the whole of the instrument, with each clause giving meaning to the other. Sentry, 718 P.2d at 927 n. 7; Cal.Civ.Code § 1641.
 
 
 23
 Section A of Skandia's reinsurance Certificate, which is only a description of the reinsurance policy, is ambiguous because it is capable of more than one reasonable construction: the section may be read to mean that the Skandia-AIIC reinsurance policy excludes all asbestos claims (as the trial court found); or, that the AIIC-OCF policy, which follows form to the Aetna umbrella policy, excludes asbestos claims only as provided in Endorsement No. 10 of the Aetna umbrella policy. The insuring agreement itself, found in paragraph 1 of the General Conditions of the Certificate, does not clarify Skandia's coverage. The agreement recites that Skandia's liability "shall follow the ceding Company's ("Company") liability in accordance with the terms and conditions of the policy reinsured hereunder except with respect to those terms and/or conditions as may be inconsistent with the terms of this Certificate." The "terms of this Certificate" are not clear.
 
 
 24
 Because Skandia's reinsurance contract is ambiguous, we must determine if there are material issues of fact regarding "the objectively reasonable expectations of the insured." Bank of the West, 833 P.2d at 552. To determine the reasonable expectations of the insured, AIIC, we must look to evidence outside the four corners of the reinsurance policy, thereby necessarily implicating the parol evidence rule.
 
 
 25
 Under California's parol evidence rule, extrinsic evidence may be admitted to interpret an agreement intended by the parties as a final expression of their agreement, but not to contradict its terms. Cal.Civ.Proc.Code § 1856(a), (g). If an agreement is integrated, extrinsic evidence may be admitted to prove an interpretation of the agreement to which it is reasonably susceptible, but not "to prove a meaning of which the language [of the contract] is not reasonably susceptible." Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co., 442 P.2d 641, 645 n. 7 (Cal.1968).
 
 
 26
 Whether or not a contract is "intended by the parties as a final expression of their agreement with respect to such terms as are included therein" is a question of law for the court. Haggard v. Kimberly Quality Care, Inc., 46 Cal.Rptr.2d 16, 21 (Cal.Ct.App.1995) (citations omitted). The resolution of whether the parol evidence rule applies is also one of law to be determined by the court. Banco Do Brasil, S.A. v. Latian, Inc., 285 Cal.Rptr. 870, 885 (Cal.Ct.App.1991). However, where extrinsic evidence is considered under the parol evidence rule, and the extrinsic evidence conflicts, the evidence must be weighed by a trier of fact. Sicor Ltd. v. Cetus Corp., 51 F.3d 848, 856 (9th Cir.1995) (applying California law.)
 
 
 27
 As a matter of law, the plain and unambiguous language of paragraph 10 of the General Conditions of Skandia's reinsurance Certificate indicates that the written contract was integrated. Because the Certificate is integrated, extrinsic evidence may be admitted to prove an interpretation of the agreement to which it is reasonably susceptible, but not to prove a meaning of which it is not reasonably susceptible. Pacific Gas, 442 P.2d at 645 n. 7. It is undisputed that neither AIIC nor Skandia intended to provide full coverage for OCF's asbestos-related claims because, at least until receipt of the OCF letter in July 1979, both AIIC and Skandia believed that Endorsement No. 10 in the underlying Aetna-OCF umbrella policy effectively limited asbestos-related liability.
 
 
 28
 The extrinsic evidence conflicts, however, on the question of whether the Certificate was an absolute exclusion for asbestos claims or whether the Certificate provided a limited exclusion for asbestos claims (as stated in Endorsement No. 10 of the Aetna policy). On this record, at least two genuine issues of material fact remain: (1) As written on March 28, 1979, was Section A a limited exclusion conditioned upon the requested confirmation by OCF, or was it an absolute exclusion that would be changed to a limited exclusion upon such confirmation?; and (2) Did the OCF letter provide the requested confirmation, or did it suggest that OCF's exposure to asbestos liability was not limited to the two subsidiaries excluded by Endorsement No. 10? Therefore, the evidence must be weighed by a trier of fact. See Sicor, 51 F.3d at 856.
 
 
 29
 For the foregoing reasons, the district court erred when it determined as a matter of law that Skandia's reinsurance Certificate unambiguously and absolutely excluded any liability for asbestos-related claims. Genuine issues of material fact exist that preclude summary judgment of dismissal on this issue.
 
 B. Condition Precedent
 
 30
 "An obligation is conditional, when the rights or duties of any party depend upon the occurrence of an uncertain event." Cal.Civ.Code § 1434. A condition precedent is an act which must be performed or an uncertain event which must occur before the promisor's duty of performance arises. Cal.Civ.Code § 1436. A condition precedent that is not met prevents the contract from coming into existence. FPI Development Inc. v. Nakashima, 282 Cal.Rptr. 508, 523 n. 13 (Cal.Ct.App.1991). An insurer may waive a condition precedent to an insurance contract. Cox v. English-American Underwriters, 245 F.2d 330, 332 (9th Cir.1957) (applying California law). However, the question of waiver depends on the knowledge and intent of the insurer and is therefore a question of fact. Id.
 
 
 31
 Skandia argues that if the contract is interpreted to follow form to the AIIC policy's limited exclusion rather than contain an absolute exclusion, its agreement to follow form to the Aetna-OCF umbrella policy was conditioned on receipt of a written confirmation that OCF's asbestos liability was limited to those OCF entities listed in Endorsement No. 10. It is uncertain whether the July 23, 1979, OCF letter satisfied the alleged condition precedent because it is uncertain whether the OCF letter, which stated that OCF manufactured asbestos products at their "Berlin, New Jersey, plant," that OCF used asbestos in the manufacture of resins and coatings materials, and that OCF's "Contracting Division" removed old insulation containing asbestos, was inconsistent with Endorsement No. 10, which limited asbestos liability to the "Fry" and "Trumbull" OCF entities. Furthermore, it is uncertain whether Skandia waived the right to rely on the alleged condition precedent as an excuse for its nonperformance by retaining the reinsurance premiums.
 
 
 32
 Therefore, genuine issues of material fact exist, and Skandia is not entitled to summary judgment on this issue.
 
 C. Mutual Mistake and Misrepresentation
 
 33
 A party has a valid defense to a breach of contract claim based on mutual mistake of fact, but mistakes of fact do not include "mistakes as to matters which the contracting parties had in mind as possibilities" at the time they entered into the contract. Guthrie v. Times-Mirror Co., 124 Cal.Rptr. 577, 581 (Cal.Ct.App.1975) (citations omitted). Additionally, both negligent and innocent misrepresentations of material facts bar recovery under a contract. Id. at 584. However, an insurer waives its fraud and mistake defenses when it accepts and retains a premium while on notice of the facts alleged. See Rutherford v. Prudential Ins. Co. of Am., 44 Cal.Rptr. 697, 705-06 (Cal.Ct.App.1965). Here, it is disputed whether, as of July 1979, when Skandia received the OCF letter, Skandia was put on notice that the OCF asbestos exposure might have been broader than described in Endorsement No. 10 of the Aetna umbrella policy. It is undisputed that Skandia retained the insurance premium and made no attempt to return it until this lawsuit was initiated. There are genuine issues of material fact regarding whether Skandia waived its right to assert the defenses of fraud and mistake. Skandia is not entitled to summary judgment on these issues.
 
 D. Notice
 
 34
 Under California law, a reinsurer may invoke the defense of "late notice" of claims asserted against the insured so long as the reinsurer immediately objects to the late notice and suffers "actual and substantial prejudice." Insurance Co. of Pennsylvania v. Associated Int'l Ins. Co., 922 F.2d 516, 523 (9th Cir.1990). Cal.Ins.Code § 554 provides that "[d]elay in the presentation to an insurer of notice or proof of loss is waived, if caused by an act of his, or if he omits to make objection promptly and specifically on that ground." See National Am. Ins. Co. of California v. Certain Underwriters at Lloyd's London, 93 F.3d 529, 538 (9th Cir.1996) (holding that a reinsurer's two-year delay before objecting to a claim on the grounds that the insured's notice of loss was untimely was not "prompt" under § 554, and therefore, a presumption arises that reinsurer waived its right to nonperformance for notice defects.)
 
 
 35
 To overcome a presumption of waiver, Skandia "must show a substantial likelihood that, with timely notice, and notwithstanding a denial of coverage or reservation of rights, it would have settled the claim for less or taken steps that would have reduced or eliminated the insured's liability." Id. at 538. (citations and quotations omitted). Even if we accept Skandia's assertion that AIIC had notice of the OCF asbestos claims in 1980, Skandia has not shown that it suffered "actual and substantial prejudice" from the late notice because Skandia has not shown that "with timely notice, and notwithstanding a denial of coverage or reservation of rights, it would have settled the claim [ ] or taken steps that would have reduced or eliminated [AIIC's] liability." Id. Therefore, Skandia is not entitled to summary judgment on this issue.
 
 
 36
 We reverse the grant of summary judgment in favor of Skandia.
 
 III.
 
 37
 The next issue presented is whether AIIC is entitled to summary judgment on the grounds that the purported absolute asbestos exclusion of the Certificate is unenforceable because it is not conspicuous, plain, and clear. "[A]n insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear.... The burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language." State Farm Mut. Auto. Ins. Co. v. Jacober, 514 P.2d 953, 958 (Cal.1973). Whether a limitation on coverage is "conspicuous, plain, and clear," is a question of law. Jauregui v. Mid-Century Ins. Co., 3 Cal.Rptr.2d 21, 23-24 (Cal.Ct.App.1991). Because insurance policy language is usually the insurer's, with no meaningful opportunity for the insured to bargain for modifications, courts normally resolve policy ambiguities in favor of finding coverage. See, e.g., Shell Oil Co. v. Winterthur Swiss Ins. Co., 15 Cal.Rptr.2d 815, 829 (Cal.Ct.App.1993). Likewise, courts interpret exclusions narrowly to protect the insured's objectively reasonable expectations. Id. However, under the "sophisticated insured" exception, different rules apply when the insured does not lack legal sophistication or bargaining power, when it is clear that an insurance policy was actually negotiated, and when evidence proves that the provision in question was jointly drafted. Id.
 
 
 38
 AIIC did not raise this issue in the district court. As a general rule, the court will not consider issues raised for the first time on appeal. New Hampshire Ins. Co. v. Vieira, 930 F.2d 696, 702 (9th Cir.1991); accord United States v. Wunsch, 84 F.3d 1110, 1114 n. 7 (9th Cir.1996). We therefore will not consider whether AIIC is entitled to summary judgment on this ground.
 
 IV.
 
 39
 The last issues are whether Skandia's claims for rescission and reformation bar recovery for AIIC, and whether Skandia's defenses of equitable estoppel and unclean hands preclude partial summary judgment for AIIC.
 
 
 40
 Under Cal.Civ.Code § 1691, a party seeking rescission of a contract must give notice "promptly upon discovering facts which entitled him to rescind." There are genuine issues of material fact regarding whether, as of July 1979, when Skandia received the OCF letter, it was put on notice that the scope of OCF's asbestos liability may have exceeded the entities listed in Endorsement No. 10 of the Aetna umbrella policy. Therefore, we cannot determine whether Skandia waived its right to reform the agreement. See Vantress Farms, Inc. v. Sydenstricker, 90 Cal.Rptr. 251, 256 (Cal.Ct.App.1970).
 
 
 41
 Moreover, the statute of limitations may bar Skandia's claims for rescission and reformation: The statute of limitations for rescission based on fraud or mistake is four years from the discovery of the fraud or mistake, Cal.Civ.Proc.Code § 337; and the statute of limitations for reformation is three years from the discovery of the fraud or mistake. Id. § 338. Skandia argues that it did not discover the alleged fraud or mistake (the true scope of OCF's asbestos liability) until 1990. As stated previously, it is disputed whether the OCF letter, which Skandia received in July 1979, revealed the likelihood of mistake. However, the existence of genuine issues of material fact regarding when Skandia discovered its possible exposure precludes determination of these defenses on summary judgment.
 
 
 42
 Finally, Skandia's assertion that AIIC's motion for summary judgment is barred for equitable reasons should be rejected. Skandia offers no evidence that AIIC concealed or misrepresented material facts, that Skandia was "ignorant of the truth," or that Skandia relied on any facts concealed by AIIC. Likewise, Skandia offers no evidence that AIIC has "unclean hands" because AIIC violated "conscience, good faith, or other equitable principle[s]." See, e.g., Pond v. Insurance Co. of North Am., 198 Cal.Rptr. 517, 521-23 (Cal.Ct.App.1984).
 
 
 43
 We also vacate denial of AIIC's partial motion for summary judgment.
 
 V.
 
 44
 In conclusion, Skandia is not entitled to summary judgment of dismissal on any of the asserted grounds. There are genuine issues of material fact regarding whether the reinsurance Certificate contained an absolute asbestos exclusion. Furthermore, AIIC's Motion for Partial Summary Judgment was not fully considered in light of the rulings on Skandia's Motion for Summary Judgment. We reverse the summary judgment of dismissal in favor of Skandia, vacate the order denying AIIC's motion for partial summary judgment, and remand for further proceedings consistent with this order.
 
 
 45
 REVERSED AND REMANDED.
 
 
 
 *
 The Honorable Robert J. Bryan, United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 In some recently filed pleadings, the Defendant Appellee is referred to as "Odyssey Reinsurance Corporation (formerly Skandia)."
 
 
 [2]
 "Following form" is a term often used in excess insurance policies where the policy incorporates by reference the terms and conditions of another policy. Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes § 1301 (7th ed. 1994)
 
 
 [3]
 Another issue presented is whether the court should strike portions of AIIC's Opening Brief and Excerpts of Record on the basis that AIIC submitted arguments and evidence on appeal that it did not submit on summary judgment in the district court. Review of the evidence Skandia seeks to strike indicates that the evidence does not affect the determination of the appeal, and therefore, the motion is unnecessary and moot