Filed 8/8/25  Yegenian v. Azm CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JOHN YEGENIAN, as Co-Trustee, etc., et al.,<br><br>　　Plaintiffs and Respondents,<br><br>　　　　v.<br><br>JIM AZM et al.,<br><br>　　Defendants and Appellants. | G063611<br><br>(Super. Ct. No. 30-2023-01343245)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Kunthavi Watson, Judge. Affirmed.

Michael L. Meyer; and Mario A. Iskander for Defendants and Appellants.

Talg, Ismail Amin, Tenny C. Rostomian-Amin, Kevin T. Meade and Cassidy R. Kitterman for Plaintiffs and Respondents.

\*　　　　\*　　　　\*

This is an appeal from an unlawful detainer proceeding between plaintiffs Yegenian Family Trust (the Trust) and John and Lynne Yegenian, Inc.,[1] and defendants J and J Towing and Transportation (J&J) and Jim Azm (collectively defendants). Defendants primarily argue that the lease is illegal, and thus invalid because a certificate of occupancy was not issued for the premises and local zoning regulations allegedly prohibit the operation of a tow yard and office at the premises. They further allege that the trial court improperly entered judgment against Azm in his personal capacity for the unpaid rent and that Lynne's signature on a lease amendment is invalid. We find no error, and accordingly, we affirm the judgment.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

*A. Background Facts*

John and Lynne began operating their business, John's Towing and Transfer (John's Towing), in 1977. In 1980, the Yegenians purchased a property located at 1110 E. 6th Street in Santa Ana and an adjoining lot located at 1112 E. 6th Street (the Premises). In 2003, the Yegenians incorporated John's Towing, forming John and Lynne Yegenian, Inc. (the Corporation), as a result. Two years later, the Yegenians created the Trust and transferred title of the Premises to the Trust.

In 2021, the Yegenians decided to sell 950 shares of the Corporation to J&J for $600,000.[2] J&J was incorporated by Azm as a holding company for his purchase of the Corporation's shares. Originally, the Corporation (as the seller), J&J (as the purchaser), and John's Towing

---

[1] Due to their common surname, we refer to the Yegenians individually by their first names, John and Lynne, for the ease of the reader.

[2] The Yegenians retained ownership of the 50 remaining shares.

entered into a Stock Purchase and Sale Agreement (the Agreement) on December 15, 2021.

On the same day the Agreement was executed, the Corporation and J&J also entered into a lease for the Premises. The lease provided for an initial term of 60 months, with one additional 60-month option. The monthly base rent was set at $10,000.00 and was to increase by three percent each year. Rent was due on the first of each month. The Agreement included a neutral drafting clause stating all parties had participated in the preparation of the lease.

In 2022, J&J withheld rent for 11 months in a row. As a result, counsel for the Yegenians filed an initial unlawful detainer complaint against J&J for past due rent. A stipulated judgment was then entered against J&J for the 2022 delinquent rent. Following those proceedings, the Corporation, J&J, and the Trust executed an amendment to the lease to correct two clerical errors.[3]

In June 2023, Azm asserts the City of Santa Ana (the City) denied him a business license for J&J, and he learned that the City's Building Department had refused to issue a Certificate of Occupancy for the buildings on the Premises. After learning this, Azm reapplied for a Certificate of Occupancy. However, Azm's application was denied again because of the presence of an office which was not compliant with the zoning of the Premises. Counsel for defendants informed the Yegenians' counsel about the lack of a Certificate of Occupancy. Initially, Azm claimed the Yegenians'

---

[3] The lease amendment clarified that the Trust, rather than the Corporation, should have been named as the landlord. Additionally, the spelling of J&J was modified from "J&J Towing and Transportation" to "J and J Towing and Transportation." The signature blocks were also amended. The amendment included no substantive changes.

3

counsel responded that she would investigate the matter and that payment of rent for July 2023 could be delayed until she responded.

A few weeks later, counsel for the Yegenians responded and required J&J to pay the rent for July 2023. Nevertheless, J&J refused to pay. Consequently, the Yegenians sent J&J and Azm a 30-day notice to perform covenant (Cure) or Quit (the Notice to Quit) on July 6, 2023. The Yegenians did not receive any monthly rent payment after the Notice to Quit was served.

*B. Procedural History*

On August 14, 2023, the Trust filed an unlawful detainer complaint against J&J and Azm for their failure to pay rent pursuant to the 2021 lease between the Corporation and J&J.

On September 7, J&J, purporting to sue on their own behalf as well as on the Corporation's behalf, filed an action against John and Lynne individually and against the Trust, seeking rescission of the Agreement and the lease, declaratory relief, and damages for breach of fiduciary duty and fraud (the rescission action).

On the same day, defendants answered the unlawful detainer complaint, asserting various defenses, including: (1) the Trust breached the warranty of habitability; (2) defendants made repairs and deducted those costs from the rent; (3) defendants offered to pay rent before the Notice to Quit expired, but the Trust refused to accept it; (4) the Trust waived, changed, or cancelled the Notice to Quit; (5) the Trust served defendants with a Notice to Quit as a form of retaliation; (6) illegality and invalidity of the lease; (7) lack of standing; (8) lack of indispensable parties; and (9) "Another Action Pending," referring to the rescission action.

4

On November 13, 2023, the Trust filed its trial brief, witness list, and exhibit list for trial. A few days later, Azm filed his trial brief. Azm also filed a request for judicial notice for (1) photographs of part of the Premises; (2) the City's Zoning Map; (3) sections of the City's municipal code; (4) the City's records regarding the permit history for the Premises; and (5) the complaint in the rescission action.

A bench trial was held on November 27, 2023, on the unlawful detainer action. Lynne and Azm testified, as did Mario Iskander, defendants' attorney, and Gregory Grantham, an individual who apparently accompanied Azm (or a representative of his) to the City's planning department.

The court took the matter under submission at the trial's conclusion and issued a minute order later the same day. The court ruled in favor of the Trust and against defendants for past due rent in the amount of $54,075.00. Possession was also awarded to the Trust. At the court's direction, the Trust's counsel prepared a form judgment, which the court signed on December 6.

Defendants unsuccessfully moved for a new trial. A mostly unsuccessful ex parte application while the motion was pending resulted in the court issuing an order directing the Orange County Sheriff to enforce the writ of possession forthwith. Shortly thereafter, while the new trial motion was still pending, defendants also filed a notice of appeal in this matter. On

February 16, 2024, the motion for new trial was heard and later denied by the trial court.[4]

## DISCUSSION

## I.

### STANDARD OF REVIEW

In an appeal from an unlawful detainer judgment, the trial court's findings of fact are reviewed to determine whether they are supported by substantial evidence. (*Palm Property Investments, LLC v. Yadegar* (2011) 194 Cal.App.4th 1419, 1425.) Under this standard of review, all evidence is considered in the light most favorable to the prevailing party. (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1266.) Our responsibility is to determine whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted, in support of the judgment. "To be substantial, the evidence must be of ponderable legal significance, reasonable in nature, credible, and of solid value." (*Ibid.*)

"To the extent the trial court drew conclusions of law based upon its findings of fact, we review those conclusions of law de novo." (*Palm Property Investments, LLC v. Yadegar, supra,* 194 Cal.App.4th at pp. 1425–1426.)

---

[4] The trial court's minute order denying the motion for new trial was issued after defendants filed their designation of record in this appeal on February 7, 2024. Thus, the trial court's minute order on the motion for new trial is not included in the record. The court retained jurisdiction, even after the notice of appeal was filed, to rule on the motion for new trial. (*Foggy v. Ralph F. Clark & Associates, Inc.* (1987) 192 Cal.App.3d 1204, 1211.)

## II.

### STATUTORY FRAMEWORK

The Unlawful Detainer Act establishes an expeditious procedure for the recovery of possession of real property. (*Stancil v. Superior Court* (2021) 11 Cal.5th 381, 394; *Coyne v. De Leo* (2018) 26 Cal.App.5th 801, 805.) As such, unlawful detainer actions are limited in scope. (*Ibid.*) Such actions only deal with the issue of right to possession and entitlement to back rent, and not other claims between the parties, even if those claims are related to the property. (*Ibid.*; see Code Civ. Proc., §§ 1161.1, subd. (a), 1174, subds. (a), (b).)

In an unlawful detainer action, a defendant may only assert defenses, if proven, that would either preserve "'*possession* as a tenant or preclude the landlord from recovering possession.'" (*Minelian v. Manzella* (1989) 215 Cal.App.3d 457, 465 (*Minelian*); see *Underwood v. Corsino* (2005) 133 Cal.App.4th 132, 135.) Two exceptions exist to this rule. The first applies to instances where a tenant has vacated the premises before a complaint is filed. The second exception allows a trial court to examine equitable considerations. Generally, equitable considerations include defenses that challenge the existence of the landlord-tenant relationship and improper acts on behalf of the landlord. (*Minelian*, at pp. 465–466.)

## III.

### DEFENDANTS' DEFENSES ARE NOT PROPER IN THIS APPEAL

In their answer to the unlawful detainer complaint, defendants asserted multiple affirmative defenses.[5] Defendants' main argument on appeal is that the lease is illegal, and thus invalid because a certificate of occupancy was not issued for the premises. Further, they assert local zoning regulations allegedly prohibited the operation of a tow yard and office. Nonetheless, these arguments do not relate to the issue of possession.

Such defenses are impermissible because if a tenant proves that a lease is fraudulent, then he has no right to remain, and if a tenant fails to prove fraud, he would have no right to possession due to delinquent rent payments. (*Nork v. Pacific Coast Medical Enterprises, Inc.* (1977) 73 Cal.App.3d 410, 414.) As such, an allegation that payment of rent is excused for most reasons must be brought as a separate suit and cannot be raised as affirmative defenses in an unlawful detainer case.[6] In fact, defendants have asserted these allegations in the rescission action filed on September 7, 2023. Therefore, these allegations will not be entertained by this court.

Additionally, neither of the exceptions to the general rule in *Minelian* are satisfied. The first exception is not satisfied because defendants

---

[5] The arguments included: (1) breach of the warranty of habitability; (2) defendants made repairs and deducted the costs from the rent owed; (3) defendants offered to pay the Trust rent, but the Trust would not accept it; (4) the Trust waived, changed, or cancelled the notice to quit; (5) the Trust served defendants with the notice to quit or filed the unlawful detainer complaint as a form of retaliation; (6) illegality and invalidity of the lease; (7) lack of standing; (8) lack of indispensable parties; and (9) "Another Action Pending."

[6] Retaliation can be a viable defense in an unlawful detainer claim, but defendants do not develop this argument on appeal.

did not vacate the premises prior to the filing of the unlawful detainer complaint. The second exception is not satisfied because defendants asserted affirmative defenses that do not relate to the relevant equitable considerations.

As to defendants' claim that the lease was void due to the lack of a certificate of occupancy, this is not a question of whether the lease was void from the outset. (See *Green v. Superior Court* (1974) 10 Cal.3d 616, 620.)[7] This appears to be an implied warranty of habitability argument under another name. Unlike the residential lease context, "a commercial tenant cannot raise an implied warranty of habitability defense in an unlawful detainer proceeding." (*Muro v. Superior Court* (1986) 184 Cal.App.3d 1089, 1098.) This argument is best pursued in the rescission action.

When defendants' improperly raised defenses are disregarded, there is substantial evidence to support the judgment. Lynne's testimony authenticated the lease. She also testified that J&J had failed to pay its rent for July through November 2023. As a result, Lynne directed the Trust's attorney to send the Notice to Quit. After the Notice to Quit was served, Lynne testified that no further payments were received. Thereafter, Lynne directed the Trust's attorneys to file the instant unlawful detainer proceeding. Lynne also testified about a document that summarized the rent that had been paid and was currently due, and the court admitted that

---

[7] In *Green,* the court held, in the context of a residential lease that "[a] landlord's breach of a warranty of habitability directly relates to whether any rent is 'due and owing' by the tenant; hence, such breach may be determinative of whether the landlord or tenant is entitled to possession of the premises upon nonpayment of rent." (*Green v. Superior Court, supra,* 10 Cal.3d at p. 620.) Accordingly, the question is not whether the lease was valid, but whether it has been breached.

9

document into evidence. She also testified that the lease included an interest on unpaid rent provision, and the total therefore owed under the lease was $54,075. This testimony and the documents referred to therein constitute sufficient evidence that J&J had not paid its rent, and accordingly, we find there was substantial evidence to support the judgment. The testimony of a single witness, when credited by the trier of fact, may constitute substantial evidence. (*People v. Cudjo* (1993) 6 Cal.4th 585, 608–609.)

In their opening brief, defendants also assert the additional defenses of frustration of purpose and quiet enjoyment. These defenses were apparently not raised in the trial court and therefore, cannot be raised for the first time on appeal. (See *Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 264; *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn.3.)

IV.

THE TRIAL COURT PROPERLY ENTERED JUDGMENT AGAINST AZM IN HIS PERSONAL CAPACITY

In a one-paragraph argument devoid of both record and legal citations, Azm contends in his opening brief that he cannot be held liable for past due rent because he did not sign the lease in his individual capacity or personally guarantee the lease, and no alter ego liability exists. Nevertheless, Azm cites to no legal authority for his contention and fails to develop a meaningful legal argument. For that reason alone, this argument can be

10

disregarded.[8] "An appellate court is not required to examine undeveloped claims, nor to make arguments for parties." (*Paterno v. California* (1999) 74 Cal.App.4th 68, 106.)

Even so, a trial court has the authority "to add a judgment debtor where a person or entity is an alter ego of the original judgment debtor." (*Butler America, LLC v. Aviation Assurance Co., LLC* (2020) 55 Cal.App.5th 136, 145–146.) When applying the alter ego doctrine, no particular findings are necessary but the conditions under which a corporate entity should be ignored vary. (*Ibid.*) "Factors for the court to consider include identical equitable ownership, commingling of funds, use of the same offices, disregard of formalities, and use of one entity as a mere shell for the affairs of another." (*Id.* at p. 146.) Particularly where a company has "no substantial business activity and no income with which to pay its debts," the trial court may enter judgment against the company's alter ego. (*Ibid.*)

Here, Azm admitted that J&J functioned solely as a holding company for his purchase of the Corporation's stock and did not conduct any other business. From Azm's admission, it was reasonable for the court to infer that J&J had no substantial business activity and no income to pay its debts. Thus, the trial court's decision to enter the judgment against Azm in his personal capacity was reasonable and supported by substantial evidence.

_____

[8] Azm attempted to expand on this argument in his reply brief, but that, too, is improper. Waiting until the reply brief to offer a meaningful argument is inherently unfair to the other party, who has no opportunity for a written response. This is particularly true when that argument could have been offered in the opening brief. (*Schubert v. Reynolds* (2002) 95 Cal.App.4th 100, 108; *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

11

## V.

## THE VALIDITY OF LYNNE'S SIGNATURE ON THE LEASE AMENDMENT IS IRRELEVANT TO THIS APPEAL

Defendants argue that the lease amendment is invalid because Lynne signed on behalf of the Corporation without the capacity to do so as she was no longer an officer or director. Nevertheless, defendants cite to no authority to support its position. As stated in rule 8.204 (a)(1)(B) of the California Rules of Court, each point in a brief must be supported by "argument and, if possible, by citation to authority." Furthermore, when a party fails to include argument and citation to authority in their briefs, the absence of these necessary elements allows an appellate court to treat appellants' contentions as waived. (*Interinsurance Exchange v. Collins* (1994) 30 Cal.App.4th 1445,1448; *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn.1 [appellate court "will not develop the appellants' arguments for them"].)

If we were to consider this argument on the merits, we would reject it. The amendment to the lease itself corrected only clerical errors, but defendants claim, without citation to authority, that if Lynne's signature was improper, it not only voided the amendment, but the entire lease. Defendants are incorrect. Typographical errors, particularly obvious ones such as an entity name or spelling error, do not render contracts invalid. (See *Klingele v. Engelman* (1987) 192 Cal.App.3d 1482, 1485-1486; *Domino v. Mobley* (1956) 144 Cal.App.2d 24, 27–28.) Such an error calls the contract's validity into question on the grounds of mistake only when there is a materially harmful error, which is not the case here. (See *Guthrie v. Times-Mirror Co.* (1975) 51 Cal.App.3d 879, 886.) Accordingly, even if the amendment was invalid, it did not effect the validity of the lease.

Furthermore, the Trust makes an astute assertion by pointing out that if defendants had an issue with Lynne's signature on the lease amendment, their objection should have been made at the time of signing. No objection to the amendment was made at the time of trial, either—it was admitted into evidence without objection.

Because we find sufficient evidence to uphold the judgment on the grounds of nonpayment of rent, we need not consider the Trust's secondary argument regarding an illegal sublease.

We are, as we have mentioned, aware that litigation continues in this matter in the rescission action. This opinion is based on the limited issues justiciable in an unlawful detainer proceeding. Nothing should be assumed from issues we do not address.

DISPOSITION

The judgment is affirmed. Plaintiffs are entitled to costs on appeal.

MOORE, ACTING P. J.

WE CONCUR:


DELANEY, J.


SCOTT, J.

13